PEOPLE v DENTON

Docket No. 71440. Submitted April 17, 1984, at Detroit.—Decided November 5, 1984.

Dwight C. Denton was convicted of armed robbery and felony-firearm following a bench trial in Recorder's Court of Detroit, M. John Shamo, J. At trial defendant raised the defense of diminished capacity to entertain the specific intent necessary for conviction on the basis of drug and alcohol intoxication. A psychiatrist testified that, if defendant had consumed the amount of drugs and alcohol he said he had consumed about the time of the crime, defendant's mental functioning at the time of the crime would have been impaired: however, the testimony did not clearly establish that the defendant could not, and did not, formulate the intent to commit the crime itself. The trial court rejected the defense of diminished capacity, holding that the evidence concerning the acts of the defendant at the time of the crime established that he had the necessary specific intent. Defendant appeals. *Held:*

1. The defense of diminished capacity, while differing from the defense of insanity in that only the lack of the mental capacity to entertain the specific intent necessary for conviction must be shown rather than legal insanity, is subject to the same procedural and evidentiary requirements as a defense of insanity.

2. Since the defendant produced evidence of diminished capacity, the prosecution had the burden of establishing that the defendant was not suffering from such diminished capacity at the time of the crime as would render the defendant incapable of entertaining the necessary specific intent.

3. Since the expert testimony did not clearly establish that the defendant could not, and did not, formulate the intent to commit the crime and, accordingly, did not clearly establish

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 21 Am Jur 2d, Criminal Law § 41.
   Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.
[3] 21 Am Jur 2d, Criminal Law § 130.
   29 Am Jur 2d, Evidence § 363.

that defendant was suffering from diminished capacity, the prosecution could properly rely on lay testimony which indicated that defendant had the necessary criminal intent to carry its burden of showing that defendant was not suffering from diminished capacity.

4. The trial court did not err in finding that the prosecution had proven that defendant entertained the necessary criminal intent and that defendant was not suffering from diminished capacity.

Affirmed.

BEASLEY, J., concurred in result only.

1. CRIMINAL LAW — DEFENSES — DIMINISHED CAPACITY — EVIDENCE — BURDEN OF PROOF.

A claim by a criminal defendant of diminished capacity to entertain the specific intent necessary for conviction, while different from a claim of insanity, is governed by the same procedural and evidentiary requirements as an insanity claim; accordingly, the prosecution must produce evidence that the defendant did not suffer from diminished capacity where the defendant has introduced evidence that he had suffered from diminished capacity; the quantum of proof demanded of the prosecution is dependent on the nature and amount of evidence furnished by the defendant.

2. CRIMINAL LAW — DEFENSES — DIMINISHED CAPACITY — EVIDENCE.

The defense of diminished capacity is available only where it is shown that the defendant's impairment rendered him unable to formulate the specific intent to commit a crime; that defense is not available where testimony establishes only that a defendant could not fully appreciate the consequences of his acts.

3. CRIMINAL LAW — SPECIFIC INTENT — CIRCUMSTANTIAL EVIDENCE.

Specific intent may be inferred from circumstantial evidence.

4. CRIMINAL LAW — DEFENSES — DIMINISHED CAPACITY — SPECIFIC INTENT — EVIDENCE — PSYCHIATRISTS.

The testimony of psychiatrists can be of assistance to a factfinder considering a claim of diminished capacity; however, the actual determination of specific intent is a matter to be decided by the trier of fact.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baugh-*

*man,* Principal Attorney, Research, Training and Appeals, for the people.

*Alan L. Kaufman,* for defendant on appeal.

Before: Shepherd, P.J., and Beasley and W. J. Caprathe,* JJ.

Shepherd, P.J. Defendant was convicted after a bench trial of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to consecutive prison terms of two years on the felony-firearm conviction and from 5 to 15 years on the armed robbery conviction. Defendant now appeals as of right.

Defendant argues that substantial evidence of his insanity was presented at trial and that the evidence of his insanity was unrebutted by the prosecutor. He asks this Court to reverse his conviction and remand for entry of a verdict of not guilty by reason of insanity. This latter request is critically flawed, however, in that defendant never claimed in the proceedings below to have been legally insane. Defendant did raise a defense of diminished capacity, apparently based on his alleged long-term abuse of drugs and alcohol. This defense is in some ways related to the insanity defense both procedurally and substantively.[1]

As with an insanity defense, a defendant must give pretrial notice of his intention to raise a claim of diminished capacity. *People v Mangiapane,* 85 Mich App 379, 395; 271 NW2d 240 (1978). A claim of diminished capacity does not require a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Mere intoxication alone, however, is insufficient to substantiate legal insanity. One who is under the influence of alcohol or controlled substances at the time of an offense shall not thereby be deemed to have been legally insane. MCL 768.21a; MSA 28.1044(1).

showing that a defendant is legally insane, however, but rather that he lacked the mental capacity to entertain the specific intent necessary for conviction of a particular crime. *Mangiapane, supra,* p 395; *People v Fields,* 64 Mich App 166, 173; 235 NW2d 95 (1975).

With regard to the defense of insanity, the prosecutor is " 'at liberty to rest upon the presumption that the accused was sane, *until* that presumption is overcome by the defendant's evidence' ". *People v Murphy,* 416 Mich 453, 464; 331 NW2d 152 (1982), *reh den* 417 Mich 1113 (1983), quoting *People v Garbutt,* 17 Mich 9, 22 (1868). Once a defendant has introduced any evidence of insanity, the burden is on the prosecutor to establish defendant's sanity beyond a reasonable doubt. *People v Savoie,* 419 Mich 118; 349 NW2d 139 (1984).

The *Mangiapane* Court found the defense of diminished capacity to fall within the codified definition of legal insanity and therefore required full compliance with MCL 768.20a, 768.29a, 768.36; MSA 28.1043(1), 28.1052(1), 28.1059. 85 Mich App 395. The procedural requirements as discussed in *Mangiapane* were further amplified in *Murphy, supra.* Since *Mangiapane* makes all procedural safeguards equally applicable to the insanity and diminished capacity defenses, we believe *Murphy* applies in the instant case also. In *Murphy,* the Supreme Court reiterated and clarified the rule that, when a defendant offers evidence of insanity, the prosecutor must meet that evidence with evidence of sanity. "Merely some evidence of sanity may be sufficient to meet some evidence of insanity and yet wholly insufficient to meet substantial evidence of insanity." *Murphy, supra,* p 464. Similarly, we hold that some evidence of diminished capacity must be met by some evidence of undi-

minished capacity. As in *Murphy,* the quantum of proof demanded of the prosecutor will vary with the nature of the proofs offered by the defendant:

"As against such a strong showing of insanity, the testimony of the police officers failed to supply evidence which could support a finding of sanity beyond a reasonable doubt. The testimony of lay witnesses may be competent evidence of sanity. It may also rebut expert testimony on the issue. * * * At the same time, the prosecution cannot send a case to the jury by opposing substantial evidence of insanity with the testimony of arresting officers that they did not observe a 'mental problem'." *Murphy, supra,* p 465.

By simply substituting the words "diminished capacity" for "insanity", we are able to discern the relative positions of the parties in a diminished capacity defense. Once the defendant presents evidence of diminished capacity, the prosecutor must counter such evidence, and the extent to which the prosecutor must do so is dependent upon the nature and amount of the evidence furnished by the defendant. In the instant case, defendant argued essentially that he had abused drugs and alcohol since his teens. He testified that he had consumed large quantities of both on the day of the crime. He remembered going to the 7-Eleven store, talking to the cashier, taking the money from the cash register and going to buy drugs from his usual seller's house immediately afterward.

Defendant's expert witness, a psychiatrist, testified that, if defendant had consumed the amount of drugs and alcohol he said he had consumed near the time of the crime, his mental functioning would have been impaired. The doctor testified that defendant's ability to "reason about a situation" would have been affected and that defendant would not have had the "capacity to reflect at the

time what am I doing, is it a sure thing, am I going to get caught here". This testimony showed that defendant might not have had the ability to adequately comprehend or appreciate the consequences of the crime or to plan it carefully. However, the doctor's testimony did not clearly establish that defendant could not, or did not, formulate the intent to actually commit the crime itself. The defense of diminished capacity is available only where it is shown that a defendant's impairment rendered him unable to formulate the specific intent to commit a crime; it is not available where testimony establishes only that a defendant could not fully appreciate the consequences of his acts. The testimony of defendant's expert witness was not a clear statement of support for a claim that defendant did not intend to commit the robbery; it was only unequivocal on the point that defendant probably did not intelligently consider the consequences before acting.

The remaining evidence fully supported the prosecutor's contention and the trial court's opinion that, even though the defendant may have been under the influence of alcohol and drugs, he was capable of and did form the necessary intent. Specific intent may be inferred from circumstantial evidence. *Fields, supra,* p 174. While the testimony of psychiatrists can be of assistance to the factfinder, the existence of specific intent is a matter to be decided by the trier of fact. *People v Fisk,* 62 Mich App 638; 641; 233 NW2d 684 (1975). The trial court here determined, based on the evidence before it, that defendant "knew exactly what he was doing * * * [and] went in that 7-11 *[sic]* with the specific intent to rob it so he could buy more pills".

We agree that the court could reasonably arrive at this conclusion on the evidence before it. Defen-

dant went into the store armed with a pistol. Apparently he initially tried to appear as if he were a regular customer, first standing in line and then walking over to the beer cooler. He then went to the side of the cash register where he could be close to the cashier, pulled out his gun, told the cashier he was robbing her, and demanded money. After leaving the store, defendant returned to his friend's car and told his friend to drive to the residence of defendant's regular source of drugs, where defendant made a purchase. Despite defendant's reliance on this point, we do not find his lack of concern during the robbery about the store surveillance camera to necessarily indicate an inability to formulate intent; it merely showed defendant's lack of concern for potential consequences.

In *Murphy,* the Supreme Court reversed the defendant's conviction and remanded for entry of a judgment of not guilty by reason of insanity. The Court's ruling was based upon the unequivocal expert testimony of insanity coupled with the factual context of that case which clearly demonstrated that the defendant had acted irrationally throughout the criminal episode. In that context, the Supreme Court held that it was insufficient for the prosecutor to rely upon lay testimony alone to establish sanity. In the instant case, however, the expert testimony does not unequivocally demonstrate a lack of diminished capacity, nor does the behavior of the defendant during the course of the events clearly demonstrate diminished capacity. Under these circumstances it was proper for the prosecutor to rely upon the description of the events and the behavior of the defendant offered by lay witnesses as evidence that the defendant

was able to form the specific intent to commit the crime.

Affirmed.

W. J. CAPRATHE, J., concurred.

BEASLEY, J., concurred in result only.