PEOPLE v METTE

Docket No. 209202. Submitted April 12, 2000, at Detroit. Decided November 17, 2000, at 9:05 A.M.

William M. Mette was convicted following a jury trial in the Macomb Circuit Court, George E. Montgomery, J., of first-degree premeditated murder and possession of a firearm during the commission of a felony. The facts leading to the criminal charges were uncontroverted. The defendant went to the house of his former wife, shot his former wife's husband three times in the face, and then drove to his sister's house and hid the murder weapon in a bag of charcoal. At trial, the defendant raised the defense of diminished capacity, claiming that he suffered from depression, which was exacerbated when he stopped taking Prozac, an antidepressant. The defense called two expert witnesses, one of whom testified concerning the effects on behavior caused by the cessation of the use of Prozac, and the other testified that the defendant was suffering from major depression and substance abuse and opined that the defendant did not have the capacity to form the requisite specific intent. The prosecution, in rebuttal, called the defendant's employer, who testified that the defendant had been an exemplary employee before the shooting, and an expert witness who had interviewed the defendant in preparation for evaluation of the defendant's competency to stand trial and who opined that the defendant possessed the capacity to form the requisite specific intent. The court instructed the jury that the prosecution had the burden of proving each of the elements of first-degree premeditated murder, including the requisite specific intent, beyond a reasonable doubt. The court also instructed the jury that the defendant had raised the defense of a diminished capacity to form the specific intent because of substance abuse and that the defendant, to be entitled to the defense of diminished capacity, had to establish by evidence that outweighed the evidence against him that he lacked the capacity to form the specific intent. The defense did not object to those instructions. The defendant appealed, arguing that the court's instructions violated his due process rights by impermissibly shifting the burden of proving the elements of the crime and that he had not been competent to stand trial.

The Court of Appeals *held*:

1. The Legislature, in MCL 768.21a; MSA 28.1044(1), has made legal insanity an affirmative defense to the prosecution for a criminal offense and has placed on the defendant the burden of proving the defense of insanity by a preponderance of the evidence.

2. Due process requires proof by the prosecution of each element of a charged crime beyond a reasonable doubt. However, a state may define the elements of an offense, and due process does not require the state to satisfy the reasonable doubt standard with respect to facts not included in the statutory definition of an offense, as long as the definition does not offend a deeply rooted principle of justice.

3. Insanity is a burden-shifting affirmative defense that does not negate selected elements or facts of the crime, but rather admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Due process is not offended where the state places on a defendant the burden of persuasion with respect to an affirmative defense such as insanity.

4. Diminished capacity comes within the codified definition of legal insanity and is subject to the same procedural requirements. Accordingly, the trial court did not err in instructing that while the prosecution had the burden of proving each of the elements of first-degree premeditated murder beyond a reasonable doubt, the defendant had to establish by a preponderance of the evidence his proffered affirmative defense of diminished capacity.

5. There is nothing in the trial court record to indicate that the defendant was not competent to stand trial.

Affirmed.

1. CRIMINAL LAW — INSANITY — AFFIRMATIVE DEFENSES — BURDEN OF PROOF — PREPONDERANCE OF THE EVIDENCE.

The Legislature has made legal insanity an affirmative defense to the prosecution for a criminal offense and has placed on the defendant in a criminal prosecution who has raised that defense the burden of proving the defense of insanity by a preponderance of the evidence (MCL 768.21a; MSA 28.1044[1]).

2. CRIMINAL LAW — BURDEN OF PROOF — DUE PROCESS — REASONABLE DOUBT.

Due process requires that the prosecution in a criminal trial prove each element of a charged crime beyond a reasonable doubt; however, a state may define the elements of an offense, and due process does not require the state to satisfy the reasonable doubt standard with respect to facts not included in the statutory definition of an offense, as long as the definition does not offend a deeply rooted principle of justice.

3. CRIMINAL LAW — INSANITY — AFFIRMATIVE DEFENSES — DUE PROCESS.

Insanity is a burden-shifting affirmative defense that does not negate selected elements or facts of a crime, but rather admits the doing of the act charged but seeks to justify, excuse, or mitigate it; due process is not offended where a state places on a defendant the burden of persuasion with respect to an affirmative defense such as insanity.

4. CRIMINAL LAW — INSANITY — DIMINISHED CAPACITY.

Diminished capacity comes within the codified definition of legal insanity and is subject to the same procedural requirements.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Robert J. Berlin,* Chief Appellate Attorney, and *Edward L. Graham,* Assistant Prosecuting Attorney, for the people.

*Carolyn A. Blanchard,* for the defendant.

Before: KELLY, P.J., and HOLBROOK, JR., and GRIFFIN, JJ.

KELLY, P.J. Following a jury trial, defendant was convicted of first-degree premeditated murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to the mandatory terms of life imprisonment for the first-degree murder conviction and two years' imprisonment for the felony-firearm conviction. Defendant now appeals as of right. We affirm.

I

On December 18, 1996, according to defendant's own statement he went to the home of his former wife with a fully loaded .22 caliber handgun. He rang the doorbell and when his former wife's husband

answered the door, defendant stated, "I got something for you." Defendant fired repeatedly and fatally shot the victim three times in the face. He then drove to his sister's house and hid the gun in a bag of charcoal in a shed. Defendant was arrested a little more than an hour later after he had given a statement at the clinic where he was being treated for depression. He told police that he had been off work for a couple of days because he was not feeling well and that he "just snapped." He stated that the victim had "hassled" him and had threatened to seek custody of defendant's children. Defendant was given an injection of Valium at the clinic by his treating physician.

These facts are not in dispute.[1] The key issue at trial was whether defendant formed the specific intent to commit first-degree premeditated murder, or whether his diminished mental capacity prevented him from forming the requisite intent.

Defendant based his diminished capacity argument on his claim that he suffered from depression, which had been exacerbated when he stopped taking Prozac, an antidepressant. Defendant began taking Prozac and Xanax, a tranquilizer, in late 1991 and had continued with daily doses. On October 28, 1996, his doctor stopped the Xanax and changed the medication from Prozac to Zoloff, another antidepressant. Defendant was also referred to a therapist. Defendant's doctor testified that, during the entire course of treatment, he did not believe defendant likely to be a harm to himself or to others.

---

[1] At the close of the prosecution's case, defendant moved for a directed verdict of second-degree murder, which the trial court denied.

At trial, defendant called Dr. David Schneider, an expert in pharmacology and toxicology, who had reviewed defendant's medical records and had examined defendant for approximately an hour just before the trial. At the time of the examination, defendant was taking Prozac, Xanax, and muscle relaxants. Dr. Schneider testified that when a patient stops taking Prozac, the effects of the drug are completely gone after approximately ten days. Thereafter, the depression returns. Dr. Schneider also testified that the sudden cessation of Prozac could result in extreme behavioral changes.

Dr. Steven Miller, a forensic and clinical psychologist, testified that he met with defendant twice for two or three hours each session. Dr. Miller relayed facts as told to him by defendant and, based on those facts, concluded that defendant was suffering from major depression, substance abuse,[2] borderline personality disorder, and dependent personality disorder. He opined that although defendant met the first prong of the insanity defense because he was mentally ill, he did not meet the legal definition of insanity because of his voluntary intoxication. Dr. Miller also opined that defendant did not possess the capacity to establish the requisite intent. However, he was not aware that defendant had gone to work and had attended a hearing concerning visitation three days before the murder and, therefore, that defendant could not have been in bed for the three days preceding the shooting as he had claimed. Dr. Miller also tes-

---

[2] Defendant allegedly had begun using marijuana and was taking Xanax in doses higher than prescribed by his physician.

tified that it was defendant, and not the victim, who had been accused of sexually assaulting his children.

In rebuttal, the prosecution called defendant's employer, who testified that defendant had worked for him for three or four months, that defendant was an exemplary employee, and that he did not know defendant was depressed. He also testified that defendant had health insurance.[3]

The prosecution also called Dr. Judith Thompson, a psychologist who had interviewed defendant in preparation for evaluation of his competency to stand trial. The doctor concluded that defendant did not meet the criteria for legal insanity and that he possessed the capacity to form specific intent. She noted that defendant recalled the shooting and prior incidents of the victim being abusive toward his children. Dr. Thompson opined that defendant's disposal of the gun after the crime showed his appreciation of the wrong he had committed. She further noted that he was able to drive to the scene, knew where he was headed, and engaged in a series of organized behaviors to get there, which indicated that the act was not random. Dr. Thompson also acknowledged that defendant suffered from major depression with suicidal ideation. However, at the time of the shooting, the medication defendant was taking brought into question whether he met the criteria for major depression because his abuse of those drugs could also create such symptoms. The doctor also noted that defendant's medical records did not indicate a severe level of depression. She opined that there was nothing about depression,

---

[3] Defendant had stated that he stopped taking the Prozac because he could not afford the prescription, though he did fill the Xanax prescription for the same period.

per se, that would prevent a person from forming specific intent to commit a crime.

II

On appeal, defendant first argues that the trial court's jury instruction on diminished capacity impermissibly shifted the burden of proof onto defendant in violation of federal and state due process clauses. Defendant claims that, because of essential differences in the two affirmative defenses, the trial court erred in imposing the procedural requirements for the insanity defense on defendant's claim of diminished capacity. Defendant did not raise a timely objection to the instruction, and, consequently, in order to avoid forfeiture of this issue, he must demonstrate plain error that was outcome determinative or error that falls under the category of cases where prejudice is presumed or reversal is automatic. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994).

This issue involves statutory interpretation, which is a question of law subject to review de novo. *People v Law*, 459 Mich 419, 423; 591 NW2d 20 (1999). When interpreting a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. *People v Joseph*, 237 Mich App 18, 20; 601 NW2d 882 (1999).

In 1994, the Legislature amended the insanity statute to provide that the insanity defense is an affirmative defense and that the defendant has the burden of proof by a preponderance of the evidence. The relevant portion of the statute provides as follows:

(1) It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when

he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness as defined in section 400a of the mental health code [now repealed MCL 330.1400a; MSA 14.800(400a)] . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or being mentally retarded does not otherwise constitute a defense of legal insanity.

\*        \*        \*

(3) The defendant has the burden of proving the defense of insanity by a preponderance of the evidence. [MCL 768.21a; MSA 28.1044(1).]

Mental illness is now defined in MCL 330.1400(g); MSA 14.800(400)(g) as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

Defendant argues that requiring a defendant to prove diminished capacity essentially requires him to disprove the element of specific intent contrary to the principle that "the Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," relying on *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Five years after deciding *Winship*, the United States Supreme Court held that, under a state homicide law, the burden could not be constitutionally placed on the defendant to prove by a preponderance of the evidence that the crime had occurred in the heat of pas-

sion on sudden provocation. *Mullaney v Wilbur*, 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975).[4]

The Supreme Court has since limited the effect of *Winship* and *Mullaney* by holding that the Due Process Clause only requires the "prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged," but does not require the prosecution to bear the burden of disproving beyond a reasonable doubt every fact constituting "any and all affirmative defenses relating to the culpability of the accused." *Patterson v New York*, 432 US 197, 210; 97 S Ct 2319; 53 L Ed 2d 281 (1977); see also *People v Eason*, 435 Mich 228, 233; 458 NW2d 17 (1990). The *Patterson* Court recognized that "preventing and dealing with crime is much more the business of the States than it is of the Federal Government." *Id.* at 201, citing *Irvine v California*, 347 US 128, 134; 74 S Ct 381; 98 L Ed 2d 561 (1954) (plurality opinion). The Court further noted that it is " 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' " and that "decision[s] in this regard are not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson, supra* at 201-202, quoting *Speiser v Randall*, 357 US 513, 523; 78 S Ct 1332; 2 L Ed 2d 1460 (1958); *Leland v Oregon*, 343 US 790, 798; 72 S Ct 1002; 96 L Ed 1302 (1952); and *Snyder v Mas-*

---

[4] Thereafter, the Supreme Court confirmed that it was constitutional to place the burden of proving the insanity defense on the defendant. *Rivera v Delaware*, 429 US 877; 97 S Ct 226; 50 L Ed 2d 160 (1976).

*sachusetts*, 291 US 97, 105; 54 S Ct 330; 78 L Ed 674; 90 ALR 575 (1934).

The Supreme Court has also emphasized that while due process erects boundaries beyond which the state may not travel, the application of the reasonable doubt standard has always relied on how the state legislature has chosen to define the crime. *McMillan v Pennsylvania*, 477 US 79, 85; 106 S Ct 2411; 91 L Ed 2d 67 (1986). The *McMillan* Court rejected "the view that anything in the Due Process Clause bars States from making changes in their criminal laws that have the effect of making it easier for the prosecution to obtain convictions." *Id.* at 89, n 5.

Our state Supreme Court has adhered to the principle that due process requires proof by the prosecutor of each element beyond a reasonable doubt. *Eason, supra* at 233. However, our Court has also recognized that "a state may define the elements of an offense, and due process does not require the state to satisfy the reasonable-doubt standard as to facts not included in the statutory definition of an offense, so long as the definition does not offend a deeply rooted principle of justice." *Id.*, citing *Patterson, supra.*

In *Patterson, supra* at 205, the United States Supreme Court upheld a state statute that reduced murder to manslaughter if the defendant proved by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional distress. The trial court instructed the jury that the defendant had the burden of proving his affirmative defense by a preponderance of the evidence. The New York Court of Appeals rejected the defendant's argument that, like the statute in question in *Mullaney, supra,* New York's statute improperly

shifted the burden of persuasion from the prosecutor to the defendant. The Court distinguished *Mullaney* on the ground that the New York statute involved no shifting of the burden to the defendant to disprove any fact essential to the offense charged because the New York affirmative defense of extreme emotional disturbance bore no direct relationship to any element of murder. *Patterson, supra* at 201.[5]

Insanity is a burden-shifting affirmative defense, placing the burden of going forward with evidence of insanity on the defendant. See *In re Certified Question*, 425 Mich 457, 467; 390 NW2d 620 (1986). " 'An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse or mitigate it . . . .' " *People v Sorscher*, 151 Mich App 122, 132; 391 NW2d 365 (1986), quoting 21 Am Jur 2d, Criminal

---

[5] Our Supreme Court, before amendment of the insanity statute, succinctly stated these principles in *In re Certified Question*, 425 Mich 457, 467-468; 390 NW2d 620 (1986):

Due process always requires proof beyond a reasonable doubt of all the elements of a crime, i.e., those facts included in the definition of the offense with which the defendant is charged. While there are constitutional limits to the state's power to define an offense, principles of federalism require deference to the state legislature's decision in this regard. The applicability of the due process reasonable doubt standard is therefore usually dependent on how the state defines the elements of the offense. The fact that this jurisdiction, like most others in this country, recognizes that the prosecution shoulders the burden of proving sanity beyond a reasonable doubt once evidence of insanity is introduced does not mean that the Legislature could not shift that burden to the defendant to prove insanity by a preponderance of evidence. If it chose to do so, such a statute would not offend the Due Process Clause of the United States Constitution, *Patterson v New York*, 432 US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977); *Leland v Oregon*, 343 US 790; 72 S Ct 1002; 96 L Ed 1302 (1952). To conclude otherwise would be to "constitutionalize" every subsidiary fact and, thus, legislative development of the criminal law would be carved in stone.

Law, § 183, p 338.[6] An affirmative defense does not " 'negate selected elements or facts of the crime.' " *People v Lemons*, 454 Mich 234, 246, n 15; 562 NW2d 447 (1997), quoting 22 CJS, Criminal Law, § 52, p 64. As our Supreme Court has observed, "due process is not offended where the state places the burden of persuasion on the defendant with respect to an affirmative defense such as insanity." *Lemons, supra* at 248, n 21. Our Supreme Court, in a case addressing ineffective assistance of counsel, has recognized the propriety of a diminished capacity defense to a charge of first-degree premeditated murder. *People v Lloyd*, 459 Mich 433, 449-450; 590 NW2d 738 (1999).

This Court has consistently held that the defense of diminished capacity comes within the codified definition of legal insanity and is subject to the same procedural requirements.[7] The defense of diminished capacity requires proof that a defendant lacked the specific intent necessary for conviction of a particular crime. *People v Denton*, 138 Mich App 568, 571; 360 NW2d 245 (1984). "The defense of diminished capacity is available only where it is shown that a defendant's impairment rendered him unable to formulate the specific intent to commit a crime; it is not available where testimony establishes only that a defendant could not fully appreciate the consequences of his acts." *Id.* at 573.

---

[6] This section is now found at 21 Am Jur 2d, Criminal Law, § 217, p 281.

[7] See *People v Mangiapane*, 85 Mich App 379, 395; 271 NW2d 240 (1978); *People v Anderson*, 166 Mich App 455, 464; 421 NW2d 200 (1988); *People v Belanger*, 158 Mich App 522, 530; 405 NW2d 405 (1987), vacated on other grounds 432 Mich 880 (1989); *People v Hollis*, 140 Mich App 589, 592; 366 NW2d 29 (1985); *People v Denton*, 138 Mich App 568, 571; 360 NW2d 245 (1984).

To prove first-degree premeditated murder, the prosecution must establish that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. MCL 750.316; MSA 28.548; *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). The burden of proving beyond a reasonable doubt each and every element within the definition of the crime charged remains steadfastly on the shoulders of the prosecution. Sanity is not an element of first-degree murder. The prosecution is not shouldered with the burden of proving the failure of an affirmative defense. MCL 768.21a(3); MSA 28.1044(1)(3); *Patterson, supra* at 210.

The trial court instructed the jury concerning the elements of first-degree premeditated murder, including specific intent. More than once, the court instructed that the prosecution must prove each of the elements beyond a reasonable doubt. The court also instructed the jury that, to be entitled to the defense of diminished capacity, defendant had to establish by evidence that outweighed the evidence against him that he lacked the capacity to form specific intent. The court instructed the jury concerning defendant's theory of incapacity to form specific intent because he was overcome by substance abuse. Additionally, the court instructed the jury to consider all the evidence regardless of which party produced it.

The court's instructions did not impermissibly shift the burden of proving the elements of the crime in violation of defendant's due process rights. The jury was instructed that the prosecution had the burden of proving the elements of the crime beyond a reasonable doubt. As a general rule, juries are presumed to

follow their instructions. *People v Banks*, 438 Mich 408, 418; 475 NW2d 769 (1991), cert den 502 US 1065 (1992). Absent a showing to the contrary, defendant has not established plain error and, therefore, this issue has been forfeited.

III

Next, defendant argues that he was denied due process because he was taking medication at the time of trial, medication that he claims "reduced his mental awareness to the point that he lacked the capacity to understand the nature of the proceedings against him, to consult counsel, and to assist in his defense."

Under MCL 330.2020; MSA 14.800(1020), a defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist in his .defense. A defendant is not considered incompetent to stand trial if he is or has been prescribed psychotropic drugs or other medication without which he might be incompetent to stand trial. Under such circumstances, the court may require a statement from defendant's treating physician that the medication will not adversely affect the defendant's understanding of the proceedings or his ability to assist in his defense.

Our review of the record does not reveal any facts indicating that defendant was not competent to stand trial. At defendant's request, he was referred to the Center for Forensic Psychiatry for a determination of his competency to stand trial and regarding his criminal culpability for the charged offense. At the preliminary examination, he stipulated Dr. Thompson's re-

port, and the district court found defendant competent to stand trial. Although he raised the issue of diminished capacity concerning specific intent, defendant did not claim insanity or that he was incompetent to stand trial.

Defendant declined to take the stand in his own defense because he claimed it would be too emotional for him to do so. At sentencing, defendant responded to the statements made by witnesses and he exercised his right to allocution. These facts indicate that the medication did not have the deep sedative effect now claimed. We find nothing in the record to indicate that defendant's competence should have been reevaluated before trial.[8]

Affirmed.

---

[8] Likewise, because there is nothing in the record to indicate that defendant was incompetent to stand trial, defendant's alternative, unpreserved claim that his counsel was ineffective for failing to object to defendant's standing trial must also fail. *People v Snider*, 239 Mich App 393, 423-424; 608 NW2d 502 (2000).