# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRELL ALLEN STALLARD,

        Defendant-Appellant.

UNPUBLISHED
March 5, 2015

No. 318708
St. Joseph Circuit Court
LC No. 13-018553-FC

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant Darrell Allen Stallard appeals as of right his conviction for armed robbery, MCL 750.569. On September 27, 2013, the trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 20 to 50 years' imprisonment. For the reasons set forth in this opinion, we affirm the conviction and sentence of defendant.

## I. BACKGROUND.

On January 8, 2012, around 7:00 p.m., a man entered an Admiral Gas Station in the City of Sturgis wearing a ski mask, gloves, and a dark coat, wielding a kitchen knife and demanded all of the money in the register. The man stole approximately $230. After fleeing the gas station, the man was seen on video footage and by witnesses throwing "something" into a trash can behind the Manpower Building. Police arrived at the scene within minutes of the robbery with a canine unit, which tracked the man to a deserted home. Witnesses led police to a trash can in which they found a large knife, a ski mask, and a brown work glove. Another brown work glove had been collected about two or three feet from the outside of the trash can. Testing was inconclusive as to a DNA match on the ski mask,[1] but defendant was found to be the major donor on the left and right brown work gloves found near the scene of the robbery.

---

[1] David Hayhurst, an employee of the Michigan State Police was qualified as an expert in the field of serology and DNA, testified at trial that defendant was not a major donor of the DNA found on the ski mask. However, Hayhurst testified that "there may be similar types visible to [defendant's] profile.

On October 23, 2012, Sturgis Police Detective Sergeant Geoffrey Smith interviewed defendant's friend Michael Miller.[2] Smith interviewed Miller because Miller indicated he had information regarding the armed robbery. Based on Miller's interview, defendant became the prime suspect for the armed robbery. Miller testified at trial that he spoke with defendant on three separate occasions. He spoke with defendant in January, but they did not discuss the armed robbery. In April, 2012, Miller and defendant talked about the armed robbery of the Admiral Gas Station. Miller testified that defendant told him he was "worried about the DNA that could be found in the gloves or the ski mask and he wanted to know my opinion on it . . . ." Defendant described the robbery in detail to Miller:

> He said he had a ski mask on and a pair of gloves and he had a knife. He said he went in and demanded the money, and he got the money. He took off running from the gas station and he ran behind the – old Manpower building and he was hiding. He heard sirens and the – there was some people sitting on a porch and they – they yelled to him and told him he better take off because the cops are coming, so he ran. He said that he threw the knife and the gloves and the mask in a – in a trash bin behind the building.

> Defendant also told Miller that he stole about $230.

Wendy Shenefield, defendant's former girlfriend and Lola Chupp, defendant's aunt, testified for defendant at trial and contradicted Miller's testimony that defendant robbed the gas station. Shenefield dated defendant in January of 2012 and testified that she saw defendant about 10:30 or 11:00 p.m. on the date of the robbery. When Shenefield saw defendant, he was wearing a grey coat with a red stripe. Shenefield testified that defendant was acting normally, and that she did not see defendant with any extra money. Chupp testified that defendant was living with her in January 2012 and that defendant's behavior appeared to be normal and that defendant [usually] wore a grey coat with a red stripe. She also testified that she and defendant were close and he would often confide in her when something was bothering him. According to Chupp, defendant never confided that he robbed the Admiral Gas Station.

The jury found defendant guilty of armed robbery and the trial court sentenced defendant as stated above.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

On appeal, defendant argues that his trial counsel was ineffective. Defendant preserved the issue by filing a motion to remand the case for a *Ginther*[3] hearing which was granted by this

---

[2] Miller was arrested in August 2012 for operating a methamphetamine laboratory. In exchange for Miller's testimony, his 20 year felony sentence was reduced to 10 years.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Court.[4] *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). At the *Ginther* hearing, defendant called Gary Boyd Jr., Christine Featherstone, and his trial counsel Christine Everson Yancey. Boyd testified that he and defendant grew up together and that when Boyd was in jail, he "bumped" into defendant. Defendant showed him the "paperwork" about Michael Miller's statement to the police. James Miller, Michael Miller's brother, was also present when defendant and Boyd were talking about Michael's statement. Boyd testified that James stated, relative to Michael's statement, "that's pretty bogue [sic] because it's not even true because I was sitting there listening to him and my mother talk about how he would do anything to get out of jail and that he was just going to feed the copes [sic] a line of bull crap and, hopefully, take it."

Featherstone testified about the whereabouts of defendant on January 8, 2012. Featherstone indicated that she and defendant were "hanging out" when she received a text from her friend indicating that the Admiral Gas Station had been robbed. Defendant was with Featherstone for the entire evening on January 8. Featherstone could not remember the exact time of the text, but she did remember that it was dark out. Defendant did not leave Featherstone's apartment and she testified that defendant was "pretty much" living with her. According to Featherstone, she did not come forward with the whereabouts of defendant on January 8 because she did not know defendant had been arrested.

Yancey testified that she was not contacted by either Featherstone or Boyd, but defendant did give Yancey Featherstone's name and indicated she was an alibi witness. Yancey attempted to locate Featherstone, but was unable to because she had been charged in a criminal matter and was in jail. Yancey mailed a subpoena to Featherstone's apartment, but Featherstone did not return the subpoena.

Yancey had James Miller's name and he was present in the court during defendant's case-in-chief. At trial, at the close of defendant's case-in-chief, Yancey explained why she was not going to call Michael's brother James Miller. She stated to the trial court:

> Your Honor, I had received a letter from James Miller regarding that [James] had information about the truthfulness of his brother Michael's testimony that he had given to officers and also to the prosecutor's office with regard to a plea deal he got last fall. He felt that he had to write the letter because of what his brother was doing.
>
> In interviewing him just now and talking to him in detail and showing him the letter and refreshing his memory on the letter, he has now said that all conversations that occurred were when his brother was incarcerated in our jail and the calls were coming into his mother's home, which Mr. James Miller is paroled to, and that the conversations were coming through his mother and he never had

---

[4] *People v Darrell Allen Stallard*, unpublished order of the Court of Appeals, entered June 18, 2014 (Docket No. 318708).

-3-

any direct conversation with his brother Michael whatsoever; that his mother was saying that Michael was relaying that he was getting the deal he needed to get.

So James has no direct – no direct testimony that he can give from conversations with Michael, and I think it's just at this point going to confuse the jury. None of it is going to be able to come in and . . . .

At the *Ginther* hearing, Yancey testified that she decided not to call James as a witness because she determined that James' testimony would be hearsay and would have confused the jury. James' proposed testimony was that Michael lied about having a conversation with defendant regarding the armed robbery. Yancey learned at trial that James did not have a direct conversation with Michael, but rather the information was relayed to him by his mother, who had a conversation with Michael on the telephone. Yancey admitted that she did not make an effort to obtain the jail telephone records between Michael and his mother and also admitted that the telephone records would have been helpful to defendant if Michael had in fact told his mother that he lied to the police about defendant. Defendant never indicated that Boyd could be a potential witness, and Yancey only learned of Boyd's name because of defendant's motion to remand for a *Ginther* hearing.

Anna Rohrer, a clerk with the Saint Joseph County prosecutor's office, testified that she is in charge of sending out subpoenas for trials. In this case, Yancey requested that Featherstone, James Miller, Schoenfeld, and Chupp be subpoenaed. Rohrer received the subpoena "mailers" back from James Miller and Schoenfeld, but she did not receive a mailer back from Featherstone. After hearing the testimony, the trial court denied defendant's motion for a new trial and this appeal then ensued.

To demonstrate ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient (i.e. objectively unreasonable), and that there exists "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

Defendant contends that his trial counsel was ineffective for failing to call James Miller as a witness and for failing to admit into evidence a written memorandum prepared by James that impeached Michael Miller's testimony. Defense counsel's decision to not call James as a witness is presumed to be sound trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). To overcome this presumption, defendant has to show he was deprived of a substantial defense. *Id.* Defense counsel stated at trial and testified at the *Ginther* hearing that she decided not to call James because she determined that James' testimony would be hearsay and the testimony would have confused the jury. Hearsay is an out-of-court statement offered to show the truth of the matter asserted. MRE 801(c). "Hearsay is not admissible except as provided" by the rules of evidence. MRE 802. James' testimony would have included double hearsay. James' mother was told by Michael that he lied to police about talking with defendant regarding the armed robbery. This is an out-of-court statement made by Michael offered to show the truth of the matter asserted – Michael lied to police. The second hearsay statement was James' mother telling James that Michael lied to police. Likewise, this is an out-of-court

statement made by the mother offered to show the truth of the matter asserted – Miller lied to police. James' proposed testimony in this regard was inadmissible hearsay. MRE 802.

Similarly, James' written statement is an out-of-court statement offered to show the truth of the matter asserted – Miller lied about talking with defendant regarding the armed robbery. See *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). The written memorandum was inadmissible under MRE 802, and it fails to fit any of the exceptions listed in MRE 803. Accordingly, trial counsel was not objectively deficient for failing to call James as a witness or to present James' written memorandum.

Defendant also contends that his trial counsel was ineffective for failing to timely file a complete witness list and failing to interview and call Boyd and Featherstone as potential witnesses at trial. At the *Ginther* hearing, trial counsel testified that she was not made aware of Boyd as a potential witness before trial. "Counsel cannot be found ineffective for failing to pursue information that his client neglected to tell him." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Accordingly, the record supports that trial counsel was not objectively deficient for failing include Boyd on the witness list, interview him, or call him as a witness.

With regard to Featherstone, defendant contends that she was an alibi witness, and had she been called at trial, she would have testified that defendant was with her all night on January 8. "An attorney's refusal to knowingly assist in the presentation of perjured testimony is not only consistent with his ethical obligations, but cannot be the basis of a claim of ineffective assistance of counsel." *People v Toma*, 462 Mich 281, 303 n 16; 613 NW2d 694 (2000). Here, Featherstone's proposed testimony appears somewhat contradictory to the testimony of another witness, Wendy Shenefield, who testified that she saw defendant on the night of the robbery. While the record established that Shenefield saw defendant at a "neighbor's" apartment, and Shenefield and Featherstone live in the same apartment building, the record does not establish that Shenefield saw defendant at Featherstone's apartment. Defendant must establish the factual predicate for his ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant did not establish that Featherstone's testimony was complimentary to Shenefield's and not contradictory. Thus, on this record we cannot conclude that defendant met his burden of showing that defense counsel was objectively deficient for failing to locate, interview, and call Featherstone as a witness at trial.

However, even if we were to conclude that trial counsel was ineffective by failing to call Featherstone, defendant has failed to show "the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), reh den 464 Mich 1212 (2001) (citation omitted). Notwithstanding Featherstone's testimony, the evidence against defendant was convincing. Defendant was the major donor of DNA in both gloves found in or near the trash can where witnesses testified defendant ran to after the robbery. Michael Miller testified that defendant described the armed robbery in detail to him, including the clothes that were worn and the amount of money that was actually stolen. The clerk at the gas station corroborated Michael's story in respect to the clothing worn by defendant during the armed robbery. Consequently, all of the evidence at trial places defendant outside of Featherstone's apartment. When Featherstone's proposed testimony is viewed in light of the evidence that was produced at trial,

we cannot find that a reasonable probability that if defense counsel called Featherstone as a witness, the result of the proceeding would have been different. Accordingly, defendant is not entitled to relief on this issue.

## III. OV 4.

Next, defendant argues that he is entitled to resentencing because the trial court erroneously scored 10 points for offense variable OV 4. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 4 of the sentencing guidelines addresses psychological injury to the victim. MCL 777.34. A score of 10 points is warranted for OV 4 if the victim suffers "[s]erious psychological injury requiring professional treatment." MCL 777.34(1)(a). "[T]he fact that treatment has not been sought is not conclusive." MCL 777.34(2). "There must be some evidence of psychological injury on the record to justify a 10–point score." *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). "The trial court may [however] rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). The clerk testified that she was scared, could not remember all of the details of the robbery, and she was concerned about her kids and defendant harming her with the knife. Police officers who responded to the scene of the robbery described the victim as "shaken up." The reasonable inference drawn from the evidence was that the clerk was put in fear during the armed robbery. See *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004) (finding the record supports a score of 10 points for OV 4 when the victim testifies to being in fear during the event in question). This testimony constitutes an almost mirror image to that which this Court considered in *Earl*. In *Earl*, this Court found evidence that the bank teller who was robbed reported that she was "nervous and scared during the robbery." *Id.* at 110. This Court in *Earl* held that such evidence "adequately supports the trial court's assessment of 10 points for OV 4. *Id.* Accordingly, the trial court did not erroneously score OV 4.

## IV. STANDARD 4 BRIEF.

Next, defendant argues that his statutory right to a speedy trial, MCL 780.131, was violated. We review de novo a violation of defendant's statutory right to a speedy trial. *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). A criminal defendant, who is incarcerated, is entitled to the commencement of trial within 180 days after the Department of Corrections (DOC) delivers to the prosecution notice that the defendant is incarcerated and requests disposition of the pending charges. MCL 780.131. The 180-day rule is set forth in MCL 780.131:

> (1) Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense

-6-

for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

MCL 780.133 requires dismissal with prejudice if a prisoner is not brought to trial within the 180-day time limit. The Michigan Court rules have also codified the 180-day rule at MCR 6.004(D).

The 180-day rule applies to "any untried charge against any prisoner [w]henever the Department of Corrections receives notice of that charge." *People v Williams*, 475 Mich 245, 255; 716 NW2d 208 (2006) (quotations and citation omitted). Before the 180-day rule is triggered, the DOC "must deliver a written notice of incarceration and request for disposition "to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending ...." *Id*. at 256, citing MCL 780.131(1). Here, MCL 780.131 applies to defendant because he was a prisoner at the Michigan Department of Corrections (MDOC), there were pending charges, and the MDOC received notice of the pending charges. *Id*. Thus, the 180-day rule applies to defendant. The prosecutor received notice of defendant's incarceration and a departmental request for final disposition of the pending charges on July 17, 2013; defendant's trial commenced on August 12, 2013. Accordingly, defendant's statutory right to a speedy trial was not violated.

Next, defendant argues that the prosecution, during its closing argument, mischaracterized the DNA evidence presented at trial. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting a defendant's substantial rights. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Prosecutorial misconduct is considered on a "case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *Watson*, 245 Mich App at 588.

Defendant argues that the prosecutor mischaractized the DNA evidence in his closing remarks. In the prosecutor's closing argument, he stated:

Then you look at the ski mask. And you heard the expert testify again that the more movement, the more stuff you have, the more skin is going to fall into it.

***

So you have a mask that presumably was put on right before [defendant] entered the store. Puts it on, goes in, "Give me your knife," – or, "Give me your money," with the knife. Runs off, runs around, takes the hat off, dumps it in the trash. Doesn't wipe his face, doesn't do this, that or the other, like he's squeezing his hands, takes it off.

\*\*\*

We know he wasn't the major donor there, but it's very reasonable to believe that he took it from somebody. He found it, he borrowed it. And what the expert testified to was there were portions of the DNA that could potentially be linked to [defendant] as the minor donor.

\*\*\*

And in the small time he had it on, that's a reasonable presumption, is that he didn't leave as much DNA on that as he did the gloves. But he was moving around all the time, that he was sweating. He was nervous.

As previously noted, Hayhurst, the DNA expert testified that defendant could not be excluded or included as a donor to the DNA found on the ski mask. The prosecution did not mischaracterize the evidence by stating that defendant's DNA could *potentially* be linked to the ski mask. Moreover, Hayhurst testified that more DNA evidence will be left behind if the person has an "increased respiration rate." A reasonable inference is that defendant left behind DNA evidence on the ski mask because the robber was seen running away from the gas station. The prosecution, in its closing argument, argued the evidence and the reasonable inferences drawn therefrom. On the record, no plain error exists because the comments were proper and the prosecution did not mischaracterize the DNA evidence. *Id.* Additionally, even assuming there was plain error, reversal is not warranted. The prosecutor's statement regarding the DNA evidence was isolated and brief in comparison to the rest of his closing argument. See *Unger*, 278 Mich App at 239 (stating a prosecution's improper remarks are not grounds for reversal when they are isolated and brief). Finally, the trial court specifically instructed the jury that it must decide the case based on the evidence, and the lawyers' arguments are not evidence. *People v Mette*, 243 Mich App 318, 330; 621 NW2d 713 (2000) ("As a general rule, juries are presumed to follow their instructions"). Thus, there is no error requiring reversal.

Defendant also argues that his counsel was ineffective for failing to object to the prosecution's mischaracterization of DNA evidence. This issue is not properly before this Court because it was not raised in the statement of questions presented. MCR 7.212(C)(5); *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999). Moreover, the prosecutor did not mischaracterize the DNA evidence, and defense counsel does not have an obligation to make a meritless objection. *People v Mesik (On Recon)*, 285 Mich App 535, 543; 775 NW2d 857 (2009).

Next, defendant contends that the trial court erred when it allowed the jury to view the admitted exhibits during deliberations. Unpreserved errors are reviewed for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant has abandoned this issue because he fails to cite to any relevant authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Nevertheless, we have reviewed the issue and conclude that the trial court did not plainly err when it allowed the jury to view the exhibits during deliberations. MCR 2.513(O).

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher