# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PAUL RICHARD HEMINGER,

Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 316959
Alger Circuit Court
LC No. 2011-001973-FH

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his conviction following a jury trial of manufacturing/delivery of marijuana, second offense, MCL 333.7401(2)(d)(*ii*). He was sentenced to six months in jail and 12 months of probation, with the first 25 days in jail to be served within 90 days' of the date of sentencing and the balance held to the end of defendant's probationary period unless otherwise ordered by the court. We reverse and remand.

Defendant admittedly grew 22 marijuana plants on his property in the Upper Peninsula. Prior to trial, defendant moved for dismissal of the charge pursuant to Section 8 of the Medical Marihuana Act (MMA), MCL 333.26421 *et seq*. The lower court denied defendant's motion to dismiss, finding that factual questions regarding the defense should be left to the jury.

We first consider defendant's assertion that the court erred in not instructing the jury on the Section 8 defense. The court appears not to have given the jury verbal instructions on the defense. However, the prosecutor asserts that the jury was provided written instructions concerning the affirmative defense. These written instructions are not in the record, but a close reading of the trial transcript shows that the jury was indeed given written instructions on the Section 8 defense. A good portion of the closing arguments of both parties focused on the Section 8 defense. And, in arguing that the defense does not apply, the prosecutor stated the following: "And the issue for you is whether the defendant has established this affirmative defense by a preponderance of the evidence . . . . So we need to turn to what you've been given. I assume you've studied it. We first of all question whether the defendant has established the first element." The prosecutor then references specific paragraphs and subparagraphs ("That's third paragraph, subparagraph A."; "it's in your second paragraph"; "and that takes us back to third paragraph listed B underneath"; "Note that in order to obtain a card, and it's up in your second paragraph there . . . ."). These statements make clear that the jury was given written

-1-

instructions addressing the Section 8 defense. Accordingly, defendant's argument is without merit. And, having failed to establish error in the jury instructions, counsel cannot be faulted for failing to challenge them. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Defendant also argues that his conviction cannot stand because the evidence clearly established the Section 8 defense. "An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse or mitigate it." *People v Mette*, 243 Mich App 318, 328-29; 621 NW2d 713 (2000). "[It] does not negate selected elements or facts of the crime." *Id.* Thus, "[t]he prosecution is not shouldered with the burden of proving the failure of an affirmative defense." *Id.* at 330. Here, it is undisputed that the prosecution established the elements of the charged offense.

To successfully raise a Section 8 defense, a defendant must establish the following by a preponderance of the evidence:

> (1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

> (2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

> (3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a)].

Here, defendant clearly established the first element of the defense. An orthopedic surgeon provided uncontroverted evidence that he had a long-existing doctor-patient relationship with defendant, that x-rays confirmed that defendant had stage-four degenerative arthritis in his shoulders, and that in 2009 the doctor indicated that defendant's treating the pain caused by his arthritis by using marijuana was appropriate. As to the second and third elements, however, a reasonable jury could have concluded that defendant was in possession of an amount of marijuana in excess of that needed to treat his pain.

Defendant responded in the affirmative when asked if would describe himself as experiencing "chronic pain." Defendant testified that the hydrocodone he was prescribed "helps

my lumbar and my shoulder somewhat, but it doesn't help my neck." He stated that he was growing the marijuana "[t]o help with my pain so I could be functional." He explained that "[b]ut like right now it doesn't matter what I take; it doesn't manage it." When asked "how often would you need to use marijuana for pain relief?" he responded, "in the morning a joint for to get going, and probably four, five joints a day." He explained he would need "[a]t least a half ounce" per week for pain relief. This means he would need roughly 104 ounces, or 6.5 pounds, of marijuana per harvest to achieve an uninterrupted supply throughout the year. However, because there was testimony that 22 marijuana plants (the number found on defendant's property) typically yield around 12 pounds of useable marijuana, the evidence reasonably shows that defendant was in possession of more marijuana than was required for pain management. While defendant and another witness both testified that defendant's outdoor growing conditions were suboptimal and unlikely to produce an average yield, we leave issues of conflicting testimony and witness credibility to the jury. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Given the possible yield, the jury could have reasonably concluded that defendant was in possession of the marijuana to either use and sell, or just to sell.

Defendant also challenges his trial counsel's effectiveness with respect to a comment made by a juror during voir dire. To preserve a claim of ineffective assistance of counsel, a defendant should move for a new trial or an evidentiary hearing in the lower court. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant failed to move for an evidentiary hearing or a new trial, the issue is not preserved for appeal. An unpreserved claim of ineffective assistance of counsel is reviewed for errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

This state has long recognized the importance of a criminal defendant's right to representation at trial. *People v Pickens*, 446 Mich 298, 311; 521 NW2d 797 (1994). The right to effective assistance of counsel is grounded in the United States and Michigan Constitutions.[1] US Const, Am VI; Const 1963, art 1, § 20. However, courts generally presume that counsel has afforded effective assistance, and it is the defendant who must overcome this burden. *People v Davis*, 250 Mich App 357, 368-369; 649 NW2d 94 (2002). To establish an ineffective assistance of counsel claim, the defendant "must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms[,] . . . (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different," and (3) the result was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Counsel generally has a duty to advocate the defendant's cause and "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). But "this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *Davis*, 250 Mich

---

[1] The "intention underlying the Michigan Constitution does not afford greater protection than federal precedent with regard to a defendant's right to counsel when it involves a claim of ineffective assistance of counsel." *Pickens*, 446 Mich at 302.

App at 368. Nor will it assess counsel's competence with the benefit of hindsight. *Matuszak*, 263 Mich App at 58. Moreover, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Id.* at 61.

During voir dire, the prosecution asked juror 13 whether he was acquainted with any witnesses or parties in the case. The following exchanged occurred in response:

> *A.* I – I know Paul [defendant]. That's –
>
> *Q.* Okay. How do you know him?
>
> *A.* I logged for – on his property for him a few years ago.
>
> *Q.* Okay. How would you describe your relationship with him? Friend? Acquaintance?
>
> *A.* Acquaintance.
>
> *Q.* Okay. Had you heard about this case? Or was it a surprise to learn he was the defendant when you walked in here?
>
> *A.* A surprise.
>
> *Q.* Okay. Did you have any knowledge that he used medical marijuana or – or grew it on his property?
>
> *A. When I logged for him, that's why I was logging because he was – he was in jail for the same – the same crime.* And I was logging to help him keep his bills paid and whatnot while he was in jail.
>
> *Q.* Okay, but did he have a – a grow operation on his property at the time?
>
> *A.* No.
>
> *Q.* Okay. Have you kept in touch with him since? Did you know anything about his circumstances since?
>
> *A.* No, I didn't. [Emphasis added.]

Defendant was not denied the effective assistance of counsel because defense counsel did not object to the highlighted comment. First, because the juror's statement was somewhat unprompted, it is not certain that a defense objection would have gained anything more than a curative instruction. Even if the lower court gave a particularized curative instruction, it would have likely drawn more attention to the issue. Therefore, by not objecting, defense counsel minimized the error as much as possible.

Second, the jury was instructed that defendant was presumed innocent and that its verdict should be based on the evidence, which the court instructed "includes only the testimony of the witnesses that you've heard over the last two days and anything else that I might tell you to

consider as evidence," including admitted trial exhibits. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Because defense counsel followed a reasonable trial strategy in electing not to call further attention to the juror's unsolicited comment, his performance did not fall below an objective standard of reasonableness. Therefore, defendant was not denied the effective assistance of counsel.

Defendant lastly contends that the prosecutor committed misconduct, thus denying him his right of due process. To preserve a claim of prosecutorial misconduct, "a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant's failure to object in this instance means that our review is limited to identifying plain error affecting his substantial rights. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

Generally, the prosecution may utilize emotional language and is not limited to bland argument when presenting its case to the jury. *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996). But, counsel must limit itself to "relevant and material matters," and must argue only those facts in evidence. *Id*.; *People v McCain*, 84 Mich App 210, 215; 269 NW2d 528 (1978). Similarly, the prosecution cannot invoke the jury's sense of civic duty by unfairly placing "issues into the trial that are more comprehensive than [the] defendant's guilt or innocence." *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003).

Defendant objects to several comments made by the prosecution during closing arguments. We consider the comments in context.

First, the prosecution attacked the credibility of the Medical Marijuana Act itself stating:

> Now, because it – it's got to be obvious to you how we – we meaning law enforcement – feel about the Medical Marijuana Act, I want to start by saying that we don't object to the idea of giving desperately ill people an escape from their suffering, not at all. We object to the – the act as drafted. And it – it really epitomizes the problem with legislation being drafted by a special interest group, as opposed to duly elected legislatures, as much as we all love to hate them.

> Clearly, [the MMA] is being abused principally by a lot of recreational users and a few physicians just exploiting that catch-all condition of – of chronic pain. And, you know, whether it's appellate courts or the legislature, a few bandaids have been applied, such as the relatively new definition of what a bona fide physician/patient relationship is. And that has hopefully stopped the signing of these certificates en masse at seminars like the one attended by Mr. Heminger at the Landmark Inn. What really needs to happen is for the ultimate certification decision to either be taken out of the hands of private physicians, or for there to be a legal source of marijuana. And that – that just seems like it has insurmountable obstacles.

* * *

And that's the most important point I can make here. You know, he – he wants you to believe this is all tied to yield. It's really tied – the math all depends on his own estimate of how much he needs. And to allow users to – to do that renders this entire act much more meaningless than it is to start with.

The prosecution also attacked the credibility of the Alger Hemp Coalition, the organization to which a defense witness belonged:

We'll also say that the – the attitude of, say, the Alger Hemp Coalition is just a – a study in mixed messages. You know, they do nothing to support the government services they want, and have nothing but criticism for the government services they don't want. We're trespassers and tramplers of their rights right up until they need us to protect them from the violence that they attract to the community. And their hostility towards anyone who disagrees with their vision for the country where everybody can walk around stoned is also kind of remarkable.

But all that said, you are unfortunately not here to judge the Medical Marijuana Act or the Alger Hemp Coalition. You are just here to judge this particular defendant on these particular facts. And in deed [sic] all of us – all any of us can do is just handle one case at a time until something changes.

Here, the prosecutor's closing argument was clearly and thoroughly improper. The prosecutor embarks on a political commentary, and a personal diatribe discrediting the MMA as a whole, claiming (without supporting evidence) that its protections are being abused by recreational users and exploitative physicians. She calls the act "meaningless," and suggests that those suffering from chronic pain are simply cheating the system. She also denigrates the general population of lawful medical marijuana users, claiming that they attract violence to the community and advocate that everyone be allowed to "walk around stoned." Finally, she states that it is unfortunate that the jury cannot judge the MMA, explaining that they can only consider defendant's case "until something changes." By making these unfounded, irrelevant and inflammatory statements, the prosecutor essentially argues that defendant's affirmative defense is nothing more than a drain on the community, and that even if he is innocent under the MMA he is simply exploiting the system. As a result, the prosecutor encouraged the jury to convict defendant despite the protections of the Section 8 defense. This affected defendant's substantial rights.

Under the plain error rule, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Although defendant cannot establish his actual innocence, the fairness of the trial is called into doubt by the prosecutor arguing that a statutory affirmative defense should not be relied upon because the policy underlying it is, according to the prosecutor, highly questionable, if not outright meaningless. Given the prosecutor's role in the system, *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003) ("A prosecutor has the responsibility of a minister of justice, not simply that of an advocate."), such misconduct calls into doubt the integrity of the process.

We reverse and remand for a new trial.  We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto