*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 23, 2019

Plaintiff-Appellee,

v

No. 341417
Wayne Circuit Court

WILLIE JOSEPH GRIMES,

LC No. 17-004669-01-FC

Defendant-Appellant.

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Following a bench trial, the trial court found defendant guilty but mentally ill of two counts of assault with intent to commit murder (AWIM), MCL 750.83, two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and three counts of felonious assault, MCL 750.82. At sentencing, the trial court vacated the AWIGBH convictions and sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 450 to 720 months for each AWIM conviction, and 60 to 180 months for each felonious-assault conviction. Defendant appeals as of right. We affirm defendant's convictions, but vacate his sentences and remand for resentencing without the fourth-habitual enhancement.

## I. BACKGROUND

Defendant has a history of mental illness, which includes diagnoses of schizophrenia, schizoaffective disorder, and bipolar disorder. Defendant had been receiving injections of the psychotropic drug Prolixin to manage his schizophrenia, but he discontinued those injections in August 2016, allegedly because he could not afford to travel to the provider's facility. When defendant was not taking Prolixin, he self-medicated with drugs and alcohol.

In October 2016, defendant was residing in the Dorchester Arms apartments in Detroit. Around 5:30 a.m. on October 18, 2016, the building's caretaker, Deborah Taiwo, discovered defendant standing on a second-story ledge, calling out his daughter's name. A few hours later, around 10:30 a.m., defendant confronted a tenant, Margo Speight, with a knife. Speight went to Taiwo's apartment to report defendant's behavior. While Speight and Taiwo were talking by the

door, defendant forced his way into Taiwo's apartment. He stabbed Speight in her arm and side, and stabbed Taiwo in her arms, back, shoulder, and face. Taiwo called out to her boyfriend, Andre Talley, for help. Talley grabbed a bat and repeatedly swung it at defendant, forcing defendant out of the apartment. Defendant tried to force his way back inside until Talley warned him that he had a gun and was prepared to use it. At this point, defendant retreated to his apartment, where police officers eventually arrested him. Defendant informed the officers that he had not taken his medication and was hallucinating and the officers transported defendant to a hospital for treatment. The prosecution later charged defendant with two counts of AWIM, two counts of AWIGBH, and three counts of felonious assault.

Before trial, defendant informed the trial court of his intention to assert a defense of criminal insanity. Ellen Garver, Ph.D., evaluated defendant for criminal responsibility. Defendant reported that he had been having visual hallucinations of raccoons on the day of the stabbing incident and that he believed that his daughter had been transformed into a raccoon. According to defendant, he was trying to rescue his daughter when he climbed onto the ledge. He claimed that he stabbed Speight and Taiwo because he thought they were involved in his daughter's transformation into a raccoon. Defendant also reported to Dr. Garver that he had consumed alcohol, marijuana, and the drug "Lean," a mixture of cough syrup containing promethazine with codeine. Dr. Garver concluded that defendant was mentally ill within the definition of MCL 330.1400(g) on the date of the offense, but she was unable to conclude with medical certainty that he was legally insane pursuant to MCL 768.21a. She found that defendant's voluntary intoxication made it impossible to conclude within a reasonable clinical certainty that defendant lacked the capacity to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the law.

Defendant also underwent an independent evaluation by Patricia Wallace, Ph.D. In the evaluation, defendant acknowledged that he had consistently used alcohol, marijuana, and Lean for the past three years. Defendant informed Dr. Wallace that he had consumed alcohol on the day before the incident, but told Dr. Wallace that he did not consume alcohol on the day of the offense. Defendant could not provide details of the offense to Dr. Wallace; he only remembered generally that he assaulted Taiwo. Based upon defendant's mental-health history, his inability to describe his state of mind at the time of the offense, and the absence of any provocation, "preparation, strategy, reason, or explanation" for the offense, Dr. Wallace concluded that defendant was legally insane.

Defendant waived his right to a jury trial. The trial court found that defendant had proven by a preponderance of the evidence that he was mentally ill, but failed to prove that he lacked substantial capacity either to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the requirements of the law. Accordingly, the trial court rejected defendant's insanity defense. The trial court found defendant guilty but mentally ill of all the charged counts. At sentencing, the trial court vacated the AWIGBH convictions because they were lesser included offenses of AWIM.[1] The trial court sentenced defendant as a fourth-

---

[1] The parties have not raised any cognate-offense issue with regard to the felonious-assault convictions.

offense habitual offender to concurrent prison terms of 450 to 720 months for each AWIM conviction and 60 to 180 months for each felonious-assault conviction. This appeal followed.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence at trial did not support his convictions because the prosecution failed to rebut his evidence of legal insanity. He further argues that the evidence was insufficient to support his convictions of AWIM because the evidence failed to show that he assaulted the victims with the intent to commit murder. He also challenges the adequacy of the trial court's findings of fact and conclusions of law. "We review de novo a challenge to the sufficiency of the evidence in a bench trial, viewing the evidence in the light most favorable to the prosecution and determining whether the trial court could have found the essential elements proved beyond a reasonable doubt." *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016).

## 1. DEFENDANT'S SANITY

MCL 768.21a provides:

(1) It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity.

(2) An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances.

(3) The defendant has the burden of proving the defense of insanity by a preponderance of the evidence.

"Mental illness" is defined in MCL 330.1400(g) as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." Drs. Garver and Wallace both agreed that defendant suffered from a mental illness as provided in these statutes. The doctors disagreed, however, whether defendant, as a result of his mental illness, lacked substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

In his brief on appeal, defendant argues that he satisfied his initial burden to set forth evidence of his insanity and that the prosecution failed to rebut this evidence. Defendant, however, misunderstands the insanity defense. Insanity is an affirmative defense. *People v*

-3-

*Mette*, 243 Mich App 318, 324; 621 NW2d 713 (2000). As such, the defendant bears the burden of proving his insanity by a preponderance of the evidence. *Id*. at 324, 328. To be entitled to raise this defense, the defendant must set forth evidence from which a reasonable factfinder may conclude that the defendant was legally insane. *People v Kolanek*, 491 Mich 382, 411; 817 NW2d 528 (2012). The prosecution bears no burden to refute the defendant's claimed defense. *Mette*, 243 Mich App at 330. Rather, once the defendant produces sufficient evidence of the elements of the defense, then the question whether het has asserted a valid defense is for the factfinder. *Kolanek*, 491 Mich at 411-412.

Here, defendant met his initial burden to set forth evidence of his insanity by introducing the expert opinion of Dr. Wallace that defendant was unable to understand what he was doing and unable to control himself when he was under the delusion that his daughter had been transformed into a raccoon. By setting forth this evidence, however, defendant did not shift the burden to the prosecutor. Rather, the question of defendant's sanity was for the trial court, sitting as factfinder, to decide.

The trial court considered Dr. Wallace's opinion as well as the contrary opinion of Dr. Garver, crediting the latter over the former. This Court will not interfere with a factfinder's credibility determinations. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The rule is especially applicable in this case, where two qualified experts offer reasonable, but divergent opinions. Moreover, while Dr. Wallace opined that defendant lacked the capacity to appreciate the nature or wrongfulness of his conduct or to conform his conduct to the law, Dr. Garver's testimony revealed potential errors in that conclusion. There was no reasonable explanation why defendant could recall the details of the offense with Dr. Garver, but not during his later interview with Dr. Wallace. Additionally, defendant did not inform Dr. Wallace that he had voluntarily consumed intoxicants on the day of the offense, which precluded Dr. Garver from making a determination as to whether defendant's intoxication caused his aggression.

Defendant argues that the trial court's finding that he was not legally insane misapplied MCL 768.21a because his intoxication was not the sole reason for his behavior. According to defendant, "a mixture of mental illness and substance abuse" does not disqualify a defendant from claiming mental insanity. Nonetheless, even if defendant's interpretation of MCL 768.21a is correct, there was sufficient evidence in the record to conclude that defendant's voluntary intoxication was the sole reason for his behavior. Dr. Garver testified that defendant revealed that he drank a pint of liquor between midnight and 7:00 a.m. before the incident. Defendant also revealed that he was feeling the effects of Lean during the incident and that his hallucinations and the stabbings were possibly related to the influence of Lean. Dr. Garver stated that most persons feel relaxed when they use Lean, but some users hallucinate and behave erratically. While defendant had been off his psychotropic medication for several months before the incident, residents reported that he was generally amicable with them. Given defendant's generally agreeable pre-offense disposition, a rational factfinder could conclude that defendant's Lean use—rather than his long-term mental illness—was the cause of defendant's hallucinations and violent outburst. Thus, we conclude that the record evidence supports the trial court's finding that defendant had not proven his insanity defense by a preponderance of the evidence.

## 2. DEFENDANT'S INTENT

Defendant also argues that the evidence was insufficient to support his AWIM convictions because the prosecution did not prove that defendant had an intent to kill Taiwo or Speight. The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (internal citation and quotation marks omitted). A defendant must possess the specific intent to kill, rather than merely a wanton and willful disregard of the likelihood that his actions will result in death. *Id.* at 149-150. "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Ericksen*, 288 Mich App 192, 197; 793 NW2d 120 (2010) (internal citation, quotation marks, and brackets omitted).

Defendant argues that his conduct was surprising and inconsistent with his amicable past relationships with the victims. While this may be true, it does not mean that defendant lacked an intent to kill during this particular incident. Testimony indicated that defendant pursued Speight and Taiwo into Taiwo's apartment and stabbed them repeatedly and violently. The attack did not end until Talley forced defendant out of the apartment with a bat. Defendant then tried to reenter the apartment, and left only after Talley threatened to shoot him with a gun. Defendant's persistent and aggressive attempts to harm Taiwo and Speight were sufficient for a rational factfinder to conclude that defendant intended to murder the victims.[2]

## 3. ADEQUACY OF THE TRIAL COURT'S FINDINGS

Defendant alternatively challenges the adequacy of the trial court's findings of fact regarding his sanity and intent. In a bench trial, "[t]he court must find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made part of the record." MCR 6.403. The trial court is not required to make specific findings of fact regarding each element of the crime charged, *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992), but its findings should show how it resolved credibility issues and other conflicts in the evidence, *People v Ramsey*, 89 Mich App 468, 477; 280 NW2d 565 (1979). "Factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *Legg*, 197 Mich App at 134.

---

[2] By arguing that his conduct was surprising and inconsistent with his past relationships with the victims, defendant appears to imply that his mental illness prevented him from purposefully forming an intent to murder. In *People v Carpenter*, 464 Mich 223, 236; 627 NW2d 276 (2001), our Supreme Court concluded that "the Legislature's enactment of a comprehensive statutory scheme concerning defenses based on either mental illness or mental retardation demonstrates the Legislature's intent to preclude the use of *any* evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent." Consequently, defendant's mental impairment short of insanity is irrelevant to determining whether he had an intent to kill.

The two principal issues at trial were (1) whether defendant was legally insane, and (2) whether defendant intended to kill Taiwo and Speight. During closing arguments, in addition to arguing the issue of defendant's sanity, the parties addressed whether the appropriate offense was AWIM or AWIGBH. Because both of these issues were contested, the trial court was required to make pertinent findings of fact and conclusions of law regarding both matters.

With regard to defendant's sanity, the trial court found that defendant had proven by a preponderance of the evidence that he was mentally ill, but failed to prove that he lacked substantial capacity either to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the law. Although the trial court did not comment on the conflicting testimony regarding this issue, its questioning of witnesses indicated that it was fully aware of the two doctor's findings and conclusions. The trial court's conclusion that defendant was not legally insane indicates that it found Dr. Garver's opinion more credible that Dr. Wallace's opinion. We are satisfied that the trial court was aware of the factual issue regarding defendant's sanity and resolved it. *Legg*, 197 Mich App at 134-135. Remand for further factual findings is unnecessary. *Id*.

Regarding defendant's intent, the parties did not disagree that defendant committed the assaults. The parties acknowledged in their closing arguments that the trial court's duty was to make a factual determination whether defendant had an intent to kill or only an intent to do great bodily harm less than murder. Initially, the trial court shirked this duty by finding defendant guilty of both AWIM and AWIGBH for the same conduct. The trial court corrected this mistake, however, by striking the AWIGBH convictions, indicating that it found that defendant had an intent to kill the victims. Accordingly, we are satisfied that the trial court was aware of the factual issue regarding defendant's intent and resolved it. *Id*. Remand for a more definite statement of factual findings is not necessary. *Id*.

## B. ASSISTANCE OF COUNSEL

### 1. EFFECTIVENESS OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel. A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Defendant argues that trial counsel was ineffective for failing to present additional and more specific evidence in support of his legal insanity defense. Defendant argues that trial counsel should have questioned the expert witnesses regarding defendant's diagnoses of schizophrenia, schizoaffective disorder, and bipolar disorder, but fails to explain what additional information could have been gleaned from this questioning or how further questioning would have aided his defense. Defendant argues that trial counsel was ineffective for failing to retain a third expert to evaluate Dr. Garver's and Dr. Wallace's opinions, but has not provided any evidence of an expert that would benefit his defense more than Dr. Wallace.

Defendant also argues that trial counsel should have presented statistical evidence concerning the effects of alcohol, marijuana, and Lean. According to defendant, trial counsel should have elicited defendant's testimony regarding how recently he used Lean and marijuana before the incident. Again, however, defendant has not provided any evidence of studies beneficial to his defense, and defendant has not shown that further testimony on his Lean and marijuana use would have aided his defense. Finally, defendant argues that trial counsel should have questioned the witnesses regarding defendant's sleep deprivation and how it might have affected his behavior and state of mind. Sleep deprivation, however, is not a defense to assault and is not evidence of legal insanity. Defendant fails to explain how this evidence would have aided his defense.

Defendant "bears the burden of establishing the factual predicate for his claim." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (internal citation and quotation marks omitted). Because defendant has failed to show this Court that trial counsel failed to present evidence beneficial to defendant's case, his claim of ineffective assistance is without merit. For this same reason, defendant has also failed to demonstrate that remand for an evidentiary hearing[3] is warranted. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

## 2. SUBSTITUTION OF COUNSEL

Next, defendant argues that the trial court erred by denying his request for new appointed counsel without adequately inquiring into the reasons for his dissatisfaction. The trial court's decision regarding substitution of counsel is reviewed for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

To be entitled to substitute counsel, an indigent defendant must show good cause for the substitution. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (internal citation and quotation marks omitted). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (internal citations and quotation marks omitted). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id*. (internal citation and quotation marks omitted). "When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusions." *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973).

---

[3] See *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

In the instant case, the trial court inquired into defendant's reasons for wanting new counsel. Defendant complained that defense counsel had not provided him with the discovery packet and had only visited him once. The trial court confirmed that defense counsel would provide defendant with the discovery packet and visit defendant to discuss the case. There is no evidence that defense counsel failed to do so and defendant did not raise any issue regarding his counsel at any subsequent conference. Because the trial court addressed defendant's concerns to defendant's apparent satisfaction, we are unable to conclude that the trial court abused its discretion by denying defendant's motion to substitute counsel or by not inquiring into the matter further.

## C. HABITUAL-OFFENDER ENHANCEMENT

Finally, defendant challenges his sentencing-guidelines range. Defendant's total Offense Variable (OV) score under the guidelines was 75 points, placing him in OV Level IV. His Prior Record Variable (PRV) score was 52 points, placing him in PRV Level E. These scores resulted in a minimum sentence range of 135 to 225 months for AWIM. MCL 777.62. Enhanced for a fourth-offense habitual offender, defendant was subjected to a mandatory 25-year minimum sentence, MCL 769.12(1)(a), and an increase in the upper end of his guidelines range to 450 months, MCL 777.21(3)(c). Defendant does not challenge his PRV or OV scores. Rather, defendant argues that the prosecution's failure to comply with the notice provisions of MCL 769.13 precluded the trial court from applying the fourth-habitual sentence enhancement, MCL 769.12.

MCL 769.13 provides, in pertinent part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

The prosecution concedes that it failed to file the notice required by MCL 769.13, but argues that the error was harmless because other documents apprised defendant of its intent to seek an enhanced sentence. We disagree.

Under MCL 769.13, within 21 days after the defendant's arraignment, the prosecution "shall" file the habitual-offender notice with the trial court and serve notice on the defendant.

> When a statute provides that a public officer "shall" do something within a specified period of time and that time period is provided to safeguard someone's rights or the public interest, . . . it is mandatory, and the public officer who fails to act timely is prohibited from proceeding as if he or she had acted within the statutory notice period. [*In re Forfeiture of Bail Bond,* 496 Mich 320, 339-340; 852 NW2d 747 (2014). See also *People v Muhammad,* 498 Mich 909 (2015) (directing this Court to consider MCL 769.13 in light of *In re Forfeiture*).]

Accordingly, where the prosecution fails to comply with a mandatory directive to formally notice the defendant of a sentencing enhancement, the proper remedy is resentencing and the harmless-error analysis is inapplicable. See *People v Cobley*, 463 Mich 893 (2000) (ordering resentencing "because the prosecutor has not proven that the notice of sentence enhancement was served on defendant within 21 days after the defendant was arraigned").[4] Therefore, because the prosecution failed to file the mandatory notice, defendant is entitled to resentencing without the fourth-habitual enhancement.

## III. CONCLUSION

We affirm defendant's convictions, but vacate his sentences and remand for resentencing without the fourth-habitual enhancement. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher

---

[4] Plaintiff cites *People v Head*, 323 Mich App 526, 542-547; 917 NW2d 752 (2018), in support of its argument that we should apply a harmless-error analysis. *Head*, however, is distinguishable because it involved the prosecutor's failure to provide a proof of service of the notice, not a failure to provide notice in the first instance. *Id*. at 544. Moreover, *Head* does not address *Muhammad or Cobley*.