*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK COLIN JENNINGS II,

        Defendant-Appellant.

UNPUBLISHED
August 15, 2024

No. 363372
Chippewa Circuit Court
LC No. 2020-005037-FH

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his conviction and sentence for prisoner in possession of a weapon, MCL 800.283(4). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve a prison term of 3 to 20 years, consecutive to the term he was serving at the time of the instant offense. We affirm.

## I. BACKGROUND

Defendant was in line, using his walker, to receive his medications at the facility in which he was incarcerated, when a fellow inmate knocked him down. Prison staff responded by subduing defendant and his attacker, and they were each sent to a segregated portion of the facility. While searching defendant when he was being taken into segregation, a prison officer discovered a pointed metal object, which defendant identified as a sharpened blade from of a pair of scissors, which was adhered to the bottom of the sole inside defendant's shoe. Defendant stated that he was not aware of the hidden weapon, and blamed his cellmate for planting it in his shoe that morning.

On appeal, defendant argues that (1) the trial court erred by not referring him for a second forensic evaluation, (2) his trial counsel's performance was deficient for failing to request such action, (3) the trial court erred by accepting a waiver of defendant's right to a jury trial, and (4) the trial court failed to respect the presumption of innocence by stating in response to defendant's exculpatory testimony that any inmate would testify to exonerate himself. Defendant alternatively argues that the trial court errantly assessed Offense Variable (OV) 19 when scoring the sentencing guidelines. We affirm.

-1-

## II.  COMPETENCY

### A.  STANDARDS OF REVIEW

Review of the trial court's determination regarding the need for a competency evaluation is for an abuse of discretion.  See *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014).  "An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes."  *Id*. at 140 (alteration, quotation marks, and citation omitted).  A trial court's decision whether to hold an evidentiary hearing is also reviewed for an abuse of discretion.  *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

The constitutional question whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo.  *Id*. at 242.

### B.  LAW

"An incompetent  defendant 'shall not be proceeded against while he is incompetent.' "  *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990), quoting MCL 330.2022(1).  A defendant's due-process right to a fair trial is violated where there is a failure to " 'observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial.' "  *Kammeraad*, 307 Mich App at 137, quoting *Drope v Missouri*, 420 US 162, 172; 95 S Ct 896; 43 L Ed 2d 103 (1975).  "[A] defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist in his defense."  *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000), citing MCL 330.2020(1).  Either the trial court or any party may raise the issue of a defendant's competence to stand trial.  MCL 330.2024; *Harris*, 185 Mich App at 102.

### C.  FACTS – DISTRICT COURT

Following defendant's arraignment, defense counsel moved for a "forensic evaluation for criminal responsibility and competency," citing defendant's history of mental-health issues and several allegedly delusional statements defendant made to trial counsel, as well as defendant's difficulty concentrating.  The district court ordered an examination at the Center for Forensic Psychiatry.

Dr. Meghan Rowland, PsyD., issued a report informing the district court that, "[b]ased on the information available at the time of this report and the defendant's presentation at the time of the current evaluation, it is this evaluator's opinion that [defendant] was competent to stand trial."  Dr. Rowland reported that she interviewed defendant for 40 minutes until he discontinued the interview, and also spoke with defendant's attorney, and reviewed his three past forensic evaluations at the facility (dating from May 2008, August 2009, and March 2010), as well as his prison, jail, and hospital records.  She stated that defendant was able to answer questions accurately, but was defensive and guarded out of concern about who would have access to the information.  She continued that defendant would represent that he did not know some information regarding his current circumstances, but later contradicted these statements, thereby indicating that his memory was intact.  Dr. Rowland reported that defendant frequently became distracted while speaking about his hopes of being transferred to a Veteran's Administration hospital because of

his Huntington's chorea disease, but could refocus with prompting. She continued that defendant presented "rational reasons" to decline further participation, including by demanding a copy of "the formal chargesheet in front of him" from the incident in question, and "wanting to consult with his attorney and an understanding of how the information would be recorded and disseminated," and that defendant "only wished to participate in the forensic evaluation if it would help him be transferred to the Veterans Administration hospital."

Dr. Rowland concluded as follows:

> Overall, based on the information and records available at the time of this report and the defendant's presentation at the time of the evaluation, [defendant] appeared capable of understanding the nature and object of the proceedings against him and assisting in his defense in a rational manner. Although [defendant] may be a difficult defendant to work with, his current presentation suggests that his present behavior appears to have been volitional in regard to declining to participate in the evaluation process after a certain point. Therefore, given the weight of the information available at the time of this evaluation, although the ultimate decision in this matter depends on a judicial determination, it is the opinion of this examiner that [defendant] was competent to stand trial.

### D. ANALYSIS

### 1. DISTRICT COURT

Defendant argues that the evaluation was not valid because defendant discontinued the interview. Defendant points out that he did not have a legal right to refuse the trial court's order for his evaluation, and asserts that the district court should have compelled his further cooperation. See *People v Spry*, 74 Mich App 584, 592-593; 254 NW2d 782 (1977) (a defendant may not "waive a determination as to the defendant's capacity"); MCR 6.125(C)(2) ("The defendant must appear for the examination as required by the court.").

However, while it was certainly important that the clinician gather as much information as possible, she was able to satisfactorily complete the task of determining defendant's competency to stand trial. Dr. Rowland arrived at her conclusions on the basis of defendant's "presentation during the current interview and information contained within collateral resources." Even though defendant was unwilling to participate fully in the mental-status examination, from the portion of the interview that defendant completed, along with the earlier forensic evaluations, and jail, prison, and hospital records that she reviewed, Rowland indicated that she was satisfied that she could offer a clinical opinion regarding defendant's competency.

Defendant argues that, because Dr. Rowland's evaluation was truncated, her conclusion was necessarily flawed. Defendant notes that documentation from defendant's caretakers while incarcerated indicated that he could present himself with organized thoughts despite underlying confusion, and that Dr. Rowland may not have appreciated that aspects of defendant's mental condition were not always readily apparent. However, Dr. Rowland's evaluation addressed such concerns, and she was aware of defendant's capacity for, and occasional manifestation of, bizarre

or delusional thoughts, and considered them while formulating her opinion. The record establishes that Dr. Rowland was not misled by the variations in how defendant presented himself.

Defendant further asserts that Dr. Rowland was unaware that defendant had been diagnosed with Huntington's disease, which could affect his mental status. However, Dr. Rowland recorded that defendant "self-reported [a] diagnosis of Huntington's Chorea," and added, "Records noted that he had genetic testing completed in 2000, and a clinical note reflected he did have a positive genetic test." Thus, Dr. Rowland did acknowledge such a diagnosis. Defendant further asserts that he presented himself as confused about his current legal difficulties. However, Dr. Rowland did address defendant's inconsistent recollections, and defendant demonstrated to Dr. Rowland an awareness of his current legal status. Defendant has failed to present factual or legal reasons why the district court should have disregarded Dr. Rowland's opinion, or otherwise erred by accepting the conclusion that defendant was competent to stand trial.

## 2. CIRCUIT COURT

Defendant argues that "there were numerous circumstances and events that should have alerted [defendant's] counsel and the trial court to the possibility that he was no longer competent" following his May 2020 evaluation, as the case proceeded in the circuit court.

A duty to address the issue of incompetence arises in the trial court when facts are presented that "raise a 'bona fide doubt' as to the defendant's competence." *Harris*, 185 Mich App at 102, quoting *People v Johnson*, 58 Mich App 473, 475; 228 NW2d 429 (1975). A "bona fide doubt" exists where "a reasonable judge . . . should have experienced doubt with respect to competency to stand trial." *Kammeraad*, 307 Mich App at 138-139 (quotation marks and citation omitted). A wide range of behaviors may indicate competency concerns, including "irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence." *Id.* at 139, citing *Drope*, 420 US at 180. "There must be some minimal showing that the accused cannot effectively communicate with his counsel, and his inability to assist in his own defense." *People v Mowrey*, 63 Mich App 676, 678; 235 NW2d 23 (1975).

In support of his argument, defendant cites a pretrial hearing almost four months after his evaluation as evidence of bona fide doubt regarding his mental competence, when defendant informed the trial court that he was not feeling well because he was adjusting to new prescription medications for Huntington's disease, and defense counsel requested an adjournment because defendant "was struggling, and I think we're still having issues," and might have difficulty remembering the hearing. At the subsequent hearing, a little more than four months later, defendant stated that he was "extremely tranquilized." Defendant states that counsel's recognition that defendant was struggling established a bona fide doubt about defendant's competence. However, these exchanges addressed defendant's level of consciousness and toleration of a new

treatment and there was no evidence that defendant or his attorney were referring to defendant's general ability to understand, or participate in, the proceedings.[1]

Defendant makes issue of a statement he offered at the adjourned pretrial hearing while discussing efforts to speak with his trial counsel in private:

> [B]ut I just wanted to tell the Court, they're purposely trying to keep me from talking to you guys. They keep shutting off the elevator and not telling me when my appointments are, and they're harassing me here because of this involvement with one of the inmates and one of the CO's involved in this are here. They're harassing me.

Defendant characterizes this statement as demonstrating a paranoid delusion that interfered with his ability to participate in his defense. However, there were several subsequent hearings, including trial, and defendant does not cite any other such ostensibly paranoid statements that might give rise to a bona fide concern that a persistent psychotic disorder precluded defendant's understanding of the charges he faced or his defense to them.

Defendant also notes instances when he expressed surprise that he was being represented by counsel during the proceedings below. Defendant filed a motion, stating that he was appearing *in propria persona*, calling for an arraignment and preliminary examination, and demanding discovery and a speedy jury trial. At the arraignment, defendant was represented by counsel, but defendant asked to represent himself, and the court instructed him that he could later make such a motion. At a subsequent motion hearing, defendant requested the appointment of counsel on the ground that he had a traumatic brain injury, and the trial court informed defendant that he was already represented by counsel. However, as discussed, such cognitive issues were discussed in defendant's forensic evaluation, despite which the examiner observed that "he did not appear to be manifesting clinical symptoms of psychosis such as making delusional statements (e.g., bizarre verbalizations and experiencing a break from reality) displaying perseveration, confusion, disorganization, poverty of speech, or tangential thinking. His thinking appeared to have been goal-directed, relevant, logical, and linear." The examiner ultimately determined, even after noting memory and concentration inconsistencies, that, "[a]t the time of the current evaluation, he appeared to have been in control of his behaviors and did not present with any acute clinical

---

[1] Despite defendant's statement about his medication, we note that he made reasoned legal arguments, interspersed with tangential, loosely related observations, in support of his pro se pretrial motion for an independent forensic evaluation. Additionally, Dr. Rowland noted defendant's "inconsistent presentation," periodic "preoccupation" with other matters, and "difficulties with concentration," while discussing defendant's medical condition and legal situation, but found that he demonstrated "more than understanding of the court process, the alleged behaviors and events, as well as a correct understanding of legal jargon than what he was choosing to discuss with this evaluator when being directly questioned about information pertaining to this specific legal case."

symptoms or deficits in his cognitive functioning which would impede his specific adjudicative capacities."

For these reasons, we conclude that defendant has failed to establish any bona fide doubt regarding his ability to effectively communicate with his counsel, or to assist in his own defense. The trial court did not abuse its discretion by declining to order a second forensic evaluation.

## E.  INEFFECTIVE ASSISTANCE

### 1.  LAW

A criminal defendant's right to counsel is guaranteed by the United States and Michigan Constitutions.  US Const, Am VI; Const 1963, art 1, § 20.  This "right to counsel encompasses the right to the effective assistance of counsel."  *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted).  The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise."  *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).  In order to prevail on an ineffective assistance of counsel argument, a defendant must show (1) "that counsel's performance was deficient," and (2) "that counsel's deficient performance prejudiced the defense."  *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted).  A defense attorney's performance is deficient if "it fell below an objective standard of professional reasonableness."  *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).  The defendant must also show that the resultant proceedings were "fundamentally unfair or unreliable."  *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

### 2.  ANALYSIS

The entirety of defendant's ineffective-assistance argument is that defense counsel's "failure to do or say anything to protect [defendant's] right to a fair trial was objectively unreasonable and rendered the trial's result unreliable and completely unjust."  However, as discussed, there was not a bona fide doubt that defendant exhibited mental illness that would preclude his understanding of, or participation in, the legal proceedings below.  Declining to raise a futile objection, or otherwise advance a meritless position, does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, defendant and his trial counsel argued at a pretrial hearing for an independent forensic evaluation, which the trial court denied.  Finally, the trial court denied defendant's motion for a new trial regarding this issue, indicating that the trial court was not inclined to grant a second forensic evaluation on the basis of anything that took place since that pretrial hearing, even if defense counsel had reintroduced the issue.  This argument, to the extent it has been properly made, has no merit.

## III.  JURY WAIVER

## A.  STANDARD OF REVIEW

Unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).  Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected

the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (alteration, quotation marks, and citation omitted).

## B. LAW

The right of a criminal defendant to have a jury determine whether he is guilty beyond a reasonable doubt is guaranteed by the federal and Michigan Constitutions. US Const, Ams VI & XIV; Const 1963, art 1, § 20. However, with the consent of the prosecutor and the approval of the trial court, a defendant may waive the right to a jury trial. MCL 763.3; *People v Leonard,* 224 Mich App 569, 595; 569 NW2d 663 (1997). For such a waiver to be valid, it must be offered knowingly and voluntarily. *People v Godbold*, 230 Mich App 508, 512; 585 NW2d 13 (1998).

A trial court ensures that a defendant's waiver is knowing and voluntary when it complies with the provisions of MCR 6.402(B). *People v Cook*, 285 Mich App 420, 422-423; 776 NW2d 164 (2009). MCR 6.402(B) provides as follows:

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

A constitutionally invalid jury waiver is a structural error that requires reversal. *Cook*, 285 Mich App at 426-427.

## C. FACTS

Defendant's appointed counsel moved to waive a jury trial. At the motion hearing that followed, the trial court asked defendant, "[Y]ou want to bench [trial] on this particular matter; is that correct?" and defendant replied, "That's correct, your honor." The trial court then informed defendant as follows:

> [Y]ou understand that by having a bench tria1, the Judge, which would be myself in this particular matter, or another judge if they're assigned, would be the arbiter of the facts? In other words, there's not a jury that's going to determine your guilt or innocence. It would be a judge, specifically. A one-person judge. Do you understand that?

Defendant replied, "I'm in complete agreement with that." The trial court inquired whether defendant was "doing this voluntarily," and defendant replied, "I do voluntarily." The court stated that it would "execute the written waiver," and defendant asked his attorney to sign the form for him, which the trial court approved. Defense counsel signed defendant's name to the waiver form.

In denying defendant's motion for a new trial on this issue, the trial court reasoned that defendant was thrice informed of his right to a jury trial—in district court, at circuit court arraignment, and at a waiver hearing—and was clear each time that he wanted to waive his right

to a jury trial. At the arraignment, the trial court informed defendant, "[Y]ou have the following constitutional rights in this particular matter. . . . You have the right to jury trial." Defendant affirmed that he understood his rights.

## D. ANALYSIS

Defendant argues that his waiver was not "fully informed" because "he was not informed of his constitutional right to a trial by jury and there is no indication that he knew the contents of the document he directed his attorney to sign."

However, as noted above, on at least three occasions defendant stated that he wished to have a bench trial. The trial court informed defendant that he could have a jury trial, and defendant was made aware at his arraignment that a jury trial was a constitutional right. And, at the waiver hearing, defendant was told he could elect a jury trial. In *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003), this Court noted that compliance with MCR 6.402(B) "only creates a presumption that a defendant's waiver was voluntary, knowing, and intelligent," and stated that a trial court's failure to follow the rule is not error requiring reversal "if the record establishes that defendant nonetheless understood that he had a right to a trial by jury and voluntarily chose to waive that right." Here, it is apparent that defendant understood his right to a jury trial, and that he voluntarily chose to give it up.

Regarding defendant's argument that he may not have known the contents of the waiver form that he directed his attorney to sign, the record indicates that defendant showed no hesitation while directing his attorney to sign the document in his absence. An attorney may waive the right to a jury trial on a defendant's behalf with "the fully informed and publicly acknowledged consent of the client." *Cook*, 285 Mich App at 423-424 (quotation marks and citations omitted). For these reasons, we conclude that the record establishes that defendant validly waived his right to a jury trial.

## IV. PRESUMPTION OF INNOCENCE

## A. STANDARD OF REVIEW

Defendant did not raise any objections concerning any failure to respect the presumption of innocence at trial, leaving this appellate objection unpreserved. Accordingly, we review the issue under the plain-error standard. *Carines*, 460 Mich at 763-764.

## B. FACTS

While explaining its guilty verdict, the trial court responded to defendant's theory that his cellmate set him up by stating that defendant had been at the prison for less than 30 days, and it was therefore "unlikely that [defendant] would have made significant contacts that would want to set him up in that short period of time." The trial court also recounted testimony from defendant's witness that he knew defendant from segregation, but did not know anything about the incident. The court then mentioned defendant's testimony, and stated that "logic would dictate that [defendant], from the incident, and this series of events, placed the weapon there himself or knew that it was there when he was pushed down." The trial court continued that, because defendant's cellmate did not know him well, it did not believe that the cellmate would set defendant up. The court

concluded that defendant's version of events was unlikely, and that the prosecutor had proved the case beyond a reasonable doubt.

The trial court then made the statement of which defendant makes issue:

[A]s [the prosecutor] indicated, any Michigan Department of Corrections inmate would suggest that they didn't know any piece of metal or weapon was on their person or else they would be convicted of this particular statute, which [defendant] is today.

## C. ANALYSIS

Defendant argues that this statement revealed a violation of his right to the presumption of innocence, because the trial court discounted defendant's exculpatory testimony on the basis of his status as a prisoner. "Every defendant has a due process right to a fair trial, which includes the right to be presumed innocent." *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016) (quotation marks and citation omitted).

It was the task of the fact-finder in this bench trial to determine the facts and assess the credibility of witnesses. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). A testifying defendant's "credibility may be impeached and his testimony assailed like that of any other witness[.]" *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995). It was proper for the trial court, sitting as the fact-finder, to evaluate defendant's credibility, including by considering his motives or incentives when testifying. We note that, with the challenged statement, the trial court was repeating the prosecutor's argument, having made the remark pronouncing defendant's guilt, while summarizing its reasons for finding that the prosecution had proved its case. Accordingly, we do not take the challenged statement as indicating that the court presumed defendant guilty simply because he was a prisoner.

The trial court did not plainly err when discussing, and rejecting, defendant's credibility.

## V. OFFENSE VARIABLE 19

## A. STANDARD OF REVIEW

This Court reviews the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

## B. LAW

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. See *id*. at 89 n 7.

The court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all OVs. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The sentencing offense determines which OVs are to be assessed, and the appropriate OVs are generally assessed on the basis of the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017) (quotation marks and citation omitted). The trial court's factual determinations regarding OVs must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

MCL 777.49(a) calls for an assessment of 25 points under OV 19 where "[t]he offender by his or her conduct threatened the security of a penal institution or court." The trial court agreed with the prosecutor's argument that OV 19 was correctly assessed because possessing a weapon in the prison was "a danger of the facility, and it was proven beyond a reasonable doubt that this individual possessed the weapon in the facility."

## C. ANALYSIS

Defendant argues that OV 19 should have been assessed at zero points because he was not a threat to the security of the prison.

As noted, after defendant was sent to a segregation unit, he was searched, and an object was found in his shoe, which defendant confirmed was a sharpened scissors blade while insisting that he was not aware that it was in his shoe. Defendant does not dispute that the sharpened blade could potentially have been used as a weapon, but argues that it posed no such risk in his possession because he, as a person confined to a wheelchair, could not access it.

The characteristic that defines an article as a weapon in prison is its "potential to cause injury, not the inmate's subjective intent." *People v Osuna*, 174 Mich App 530, 532; 436 NW2d 405 (1988). Actual or "even constructive" possession of an object may threaten the security of a penal institution "depending on the item possessed." *People v Dixon*, 509 Mich 170, 179; 983 NW2d 385 (2022). The sharpened scissors blade found on defendant could obviously threaten other inmates and prison staff as a cutting or stabbing device. Indeed, a corrections officer serving at the prison testified that the object was a prisoner-made weapon, as opposed to some benign object defendant just happened to have on his person. Despite defendant's protestations, the evidence did not clearly establish that his mobility limitations would have entirely prevented him from accessing his shoes and a weapon concealed therein. And any aggressive use of such a cutting instrument surely would compromise staff or inmate safety. The trial court did not err by finding that defendant's possession of a weapon in his shoe was a threat to the security of the prison, and therefore properly assessed 25 points for OV 19.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani