*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
September 19, 2024

v

No. 366066
Barry Circuit Court
LC No. 2022-000635-FH

CHRISTOPHER SCOTT HURLESS,

        Defendant-Appellant.

Before: FEENEY, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his sentences following guilty pleas to possession of methamphetamine, MCL 333.7403(2)(b)(*i*); stalking, MCL 750.411h; and trespass to land, MCL 750.552. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 10 to 20 years' imprisonment for possession of methamphetamine, 87 days' imprisonment for stalking, and 87 days' imprisonment for trespass to land. This case asks us to decide whether the prohibitions against a sentencing court relying on acquitted conduct as an aggravating factor, as outlined in *People v Beck*, 504 Mich 605, 625-630; 939 NW2d 213 (2019), extend to the conduct underlying the dismissal of charges based on the defense of not guilty by reason of insanity (NGRI). We conclude that they do not, and therefore affirm.

## I. FACTUAL BACKGROUND

This action originates from defendant's arrest after a three-year pattern of stalking the victim.[2] Defendant previously had a relationship with the victim's sister and was the biological

---

[1] *People v Hurless*, unpublished order of the Court of Appeals, entered June 21, 2023 (Docket No. 366066).

[2] The background facts presented here are from the presentence investigation report. Courts may rely on information in a PSIR, "which is presumed to be accurate unless the defendant effectively

father of the victim's nephew, but the victim herself had no other immediate connection to him. In addition to harassing the victim, defendant engaged in similar behavior toward the victim's sister for 12 years. Despite the years-long pattern of conduct, defendant was not convicted of stalking the victim prior to this case. Defendant's conduct toward the victim, however, formed the basis for a 2019 home-invasion charge. Defendant raised an NGRI defense to that charge, which the court accepted as valid. The charge was thereafter dismissed.

In mid-September 2022, the victim's home security system captured defendant walking through her backyard. The police were dispatched to the victim's home in the early evening. When they arrived, the victim informed the police that in the past, defendant had broken into her home, left objects on the front porch, including dog feces, cookies, coffee, and hot chocolate, and shown up to her house unexpectedly. She showed them photos "taken that morning" depicting defendant on her property. The victim also showed the officers defendant's YouTube channel. There, he had videos in which he directly addressed the victim, including one in which he used expletives and said he would "beat [her] face in[to] the floor" and called her a "whore." The victim told the police that law enforcement had recently warned defendant to stay away from her property. The victim indicated that she felt threatened by defendant's behavior.

The police contacted defendant about his presence on the victim's property. He admitted being on the victim's property, but, according to the presentence investigation report (PSIR), stated that he was "only passing by." Defendant indicated that he did not know he was intimidating or making the victim uncomfortable.[3] The police arrested defendant for trespassing and stalking based on his repeated unwelcome contact and the history between the parties. After they made the arrest, the police searched defendant and discovered a glass pipe and a small plastic bag containing crystals and powder on his person. The substance in the bag was later tested and determined to be approximately 0.1 grams of methamphetamine. According to the PSIR, defendant acknowledged having used methamphetamine on the day of his arrest.

The prosecution charged defendant with one count of possession of methamphetamine, MCL 333.7403(2)(b)(i), with a fourth-offense habitual offender enhancement, MCL 769.12; one count of stalking, MCL 750.411h; and one count of trespass to land, MCL 750.552. The possession charge is a felony, ordinarily punishable by up to 10 years in prison, but the fourth-offense habitual offender notice increased the statutory maximum punishment to life imprisonment. The stalking and trespass charges are both misdemeanors, with respective statutory maximum punishments of one year in jail and 90 days in jail. The habitual offender notice had no impact on their penalties. At a mid-October 2022 plea hearing, defendant pleaded guilty to each count.

In early December 2022, the Michigan Department of Corrections (MDOC) prepared a PSIR for defendant. In the PSIR, MDOC calculated a minimum sentencing guideline range of 10

---

challenges the accuracy of the factual information." *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997).

[3] It is unclear from the PSIR whether defendant made this statement to the officer who prepared the PSIR or to the police when they questioned him.

to 46 months' imprisonment for his conviction of possession of methamphetamine, based on a total prior record variable (PRV) score of 100 points, placing him at PRV level F, and a total offense variable (OV) score of zero, placing him at OV level I. The PSIR documented defendant's criminal history, which included 12 adult convictions of varying severity between 1999 and the 2022 sentencing. Notably, it also included two cases from June 2019 that resulted in NGRI dismissals: one involving assaulting, resisting, or obstructing a police officer, and one involving second-degree home invasion. At least one of these NGRI dismissals (the home invasion) related to conduct toward the victim. MDOC recommended a sentence of 2 to 10 years (a within-guidelines sentence) for the drug possession and sentences of 87 days for both misdemeanors.

Defendant was sentenced in December 2022. During the hearing, the victim read her victim-impact statement, describing the "constant state of fear," "anxiety," and "helplessness" she felt as a result of defendant's conduct. The victim impact statement referenced defendant's prior acquittals by reason of insanity. In imposing its sentence, the trial court stated its belief that defendant was dangerous. The trial court also considered defendant's lengthy criminal record and history of recidivism. Referencing defendant's crimes "go[ing] back to 2000," the trial court noted several that were "dismissed because of his mental health." Regarding the two acquittals by reason of insanity, the trial court stated:

> Resisting, obstructing a police officer, not guilty by insanity. Still committed the crime. 2019, again, another home invasion, not guilty by reason of insanity.
>
> Another crime that to me, mental health issues aren't more valuable than my safety. I don't think we get people to run around the streets, I'm mentally ill so I get to rape you. I'm mentally ill so I get [to] steal your car. I—I think that's crazy. I think—I think it's wrong. And now we get just a few years later this charge. He's very dangerous. He's very, very dangerous in my eyes.

The trial court indicated that it would depart from the guidelines, relying on the seriousness of defendant's convictions, the need to protect society, and the failure of previous rehabilitative efforts to justify the departure. The trial court sentenced defendant to 120 to 240 months' (or 10 to 20 years') imprisonment for the possession of methamphetamine conviction, a minimum sentence that was 74 months above the recommended minimum range of 10 to 46 months. Despite its stated concerns regarding the conduct underpinning the stalking and trespassing convictions, the trial court sentenced defendant to 87 days' credit for time served for both convictions. This was nine months below the statutory maximum for the stalking conviction and three days below the statutory maximum for trespass. After imposing the sentence, the trial court stated:

> You have no right—no right to break into people's homes. You have no right to peek into people's windows. You have no right [to] invade people's privacy and make them feel uncomfortable, unsafe. No right whatsoever. None. When and if you get out of prison, if you come back to Barry County, you're going to get the same thing, only more.

This appeal followed.

## II. ANALYSIS

### A. *BECK*'S APPLICATION TO NGRI DISMISSALS

Defendant first argues that trial court's consideration of acquitted conduct when sentencing him violated his due-process rights. We disagree.

We generally review "constitutional claims under a de novo standard." *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021). Defendant failed to raise his argument regarding the trial court's consideration of acquitted conduct during sentencing, and it is therefore unpreserved. See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) ("To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals."). See also *People v Brown*, 326 Mich App 185, 191-192; 926 NW2d 879 (2018) (noting that to preserve a constitutional claim a defendant must "raise an objection on the ground" also raised on appeal); MCL 769.34(10); MCR 6.429(C).

We review unpreserved issues "for plain error affecting a defendant's substantial rights." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). See also *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020) (applying plain-error analysis to an unpreserved issue involving consideration of acquitted conduct at sentencing). To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected their substantial rights—in other words, the error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if a defendant satisfies these three requirements, reversal is only warranted if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Id*. at 763-764. Sometimes identified as a fourth prong of plain-error analysis, this last step conceptually overlaps with the third prong. *People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).

In *Beck*, 504 Mich at 629, our Supreme Court held that sentencing courts cannot consider conduct for which a defendant has been acquitted. The rationale behind this decision is that an acquittal signifies a jury's determination that the prosecution failed to prove the defendant's guilt beyond a reasonable doubt. *Id*. at 626. The NGRI statute, MCL 768.21a(1), specifies that an NGRI verdict means that the defendant committed the act but was legally insane at the time of the offense. The statute states, in relevant part:

> (1) It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane *when he or she committed the acts constituting the offense*. An individual is legally insane if . . . that person lacks substantial capacity either to appreciate the nature and quality or *the wrongfulness of his or her conduct* or to conform his or her conduct to the requirements of the law. Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity. [Emphasis added.]

The facts of *Beck* concerned conduct for which the defendant was acquitted outright, signifying a lack of proof beyond a reasonable doubt that the defendant committed the charged crimes. See *Beck*, 504 Mich at 626-627. The *Beck* Court specifically stated that its holding regarding acquitted conduct applies when a factfinder—in the *Beck* context, a jury—"has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct[.]" *Id*. at 626. This is distinct from circumstances where a defendant raises an affirmative NGRI defense. In order to raise an NGRI defense, the defendant must *admit* that they committed the crime, but could not appreciate that their conduct was criminal in nature. See *People v Mette*, 243 Mich App 318, 328-329; 621 NW2d 713 (2000) (noting that the defense of insanity is an affirmative defense that "*does not negate selected elements or facts of the crime*." (quotation marks and citations omitted; emphasis added)). This does not disprove that the conduct occurred, but rather acknowledges the defendant's mental incapacity to be held criminally responsible.

We conclude that successfully proving an NGRI defense is not the same as earning an acquittal based on the prosecutor's failure to prove that a crime was committed beyond a reasonable doubt. This is so because successfully raising an NGRI defense does not result in an acquittal in the traditional sense of the word, or at the very least not the type of acquittal contemplated by the *Beck* Court. Consequently, defendant has not met his burden under the plain-error standard. *Carines*, 460 Mich at 763-764.

## B. PROPORTIONALITY

Defendant additionally argues that he is entitled to resentencing because his sentences were unreasonable and disproportionate. We disagree.

A trial court's upward departure from a defendant's calculated guidelines range is reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review "the reasonableness of a sentence for an abuse of the trial court's discretion." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). Generally, "[a] trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). A defendant's sentence may also be an abuse of discretion if it "violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

The minimum sentencing guidelines are only advisory; however, those guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Lockridge*, 498 Mich at 391. To determine if an upward departure is more proportionate than a sentence within the guidelines range, a trial court may consider factors including, but not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Walden*, 319 Mich App at 352-353 (citation omitted).]

A trial court may also consider a defendant's "extensive criminal history and tendency to reoffend" in determining whether an upward departure is proper. *People v Odom*, 327 Mich App 297, 318; 933 NW2d 719 (2019). In making a proportionality determination, a trial court must "justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. "This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Smith*, 482 Mich at 311.

Defendant largely argues that his sentence was disproportionate because the trial court considered his criminal record in sentencing him, including the 2019 charges that were dismissed based on his NGRI defense. In *People v McIntire*, 461 Mich 147, 155-156; 599 NW2d 102 (1999), our Supreme Court emphasized the importance of judicial discretion in sentencing, allowing judges to consider a wide range of factors to determine the most appropriate punishment. The trial court's discretion in considering a defendant's past conduct, including conduct for which the defendant raised an NGRI defense, is consistent with the broader principles of individualized sentencing and the need to protect public safety. Moreover, the consideration of such conduct does not equate to punishing the defendant for those past acts. Rather, it informs the court's understanding of the defendant's character and his potential risk to society. This distinction is crucial in maintaining the balance between fair sentencing and public protection. Here, by considering the totality of defendant's criminal record, including those crimes for which he successfully raised an NGRI defense, the trial court adequately fulfilled the goal of tailoring the offense to the offender.

Additionally, it bears repeating that one of the charges for which defendant raised an NGRI defense involved the same victim at issue in the instant matter. Michigan's sentencing guidelines, as outlined in MCL 769.34(3), allow courts to consider various factors, including the defendant's criminal history and behavior, to ensure sentences are appropriate to the individual and the offense. The trial court, by considering defendant's prior conduct with this specific victim, aimed to craft a sentence that not only addressed the punishment for his current offenses but also considered his potential for committing future offenses. Given defendant's pattern of behavior, including repeated harassment of the same victim, it was within the trial court's discretion to consider his past conduct. In doing so, the court crafted a sentence that adequately considered defendant's overall risk to society and need for rehabilitation. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 661; 620 NW2d 19 (2000) ("[A] trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender in an effort to balance society's need for protection against its interest in rehabilitation of the offender.").

A conviction for a scant amount of methamphetamine, in and of itself, would not justify a prison sentence of 10 to 20 years, particularly with a properly scored guidelines range of 10 to 46 months. Arguably, when viewed in a vacuum, the sentence seems excessive and disproportionate. But here, defendant was convicted as a fourth-offense habitual offender under MCL 769.12. This, coupled with defendant's complete criminal history, the history between defendant and the victim, the victim's impact statement, and the rationale articulated by the sentencing court, adequately supports the lengthy sentence issued by the court. Considering these other permissible sentencing factors, we hold that defendant's sentence was reasonable and proportionate. Defendant is not entitled to relief.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick